21 F.3d 1117
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Marvin Vincent HARRIS, Defendant-Appellant.
 No. 93-50316.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 8, 1994.
Decided April 11, 1994.
 
 Before: PREGERSON, O'SCANNLAIN, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 Petitioner Marvin Vincent Harris appeals the sentence imposed after his conviction for armed bank robbery and for knowingly using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. Sec. 2113(a)(d) and 18 U.S.C. Sec. 924(c)(1). The District Court sentenced Harris to a term of 188 months on the bank robbery count and 60 months on the firearms count, to be served consecutively. Harris was also sentenced to five years supervised release. We have jurisdiction pursuant to 18 U.S.C. Sec. 3742.
 
 BACKGROUND
 
 3
 Harris, along with co-defendant Robert Earl McAllister and an unknown third co-conspirator, committed armed bank robbery of the Bank of America, 8701 South Western Avenue, Los Angeles, California, on June 11, 1992. At approximately 10:15 a.m., McAllister and the third robber entered the bank. Harris remained at the bank's outside door to act as a look-out. Upon entering the bank, the third robber displayed a small chrome revolver and announced, "Everybody listen up! This is a robbery!" While the third robber kept guard inside the bank door, McAllister entered the teller area, removed approximately $1,395.00 in U.S. currency and bait bills from several teller stations, and placed the money in a maroon purse.
 
 
 4
 Meanwhile, Harris observed Officer Alvin Arthur, an off-duty Los Angeles Police Department officer who was working as a security guard for the bank, speaking with someone outside the bank. Harris pointed his revolver at Officer Arthur and ordered him to lie on the ground. In response, Officer Arthur removed his own gun and ordered Harris to drop his weapon. Harris complied and was arrested.
 
 
 5
 At this same time, the third robber fled the bank on foot and escaped capture. Upon entering the bank following the arrest of Harris, Officer Arthur arrested McAllister.
 
 
 6
 Both Harris and McAllister later pled guilty to counts two and three of a three-count indictment.
 
 
 7
 In the Presentence Report, the Probation Officer calculated Harris's base offense level for count two at 34, because of his determination that Harris is a career offender pursuant to the Sentencing Guidelines Sec. 4B1.1. The Presentence Report further recommended that Harris receive a three-level reduction for acceptance of responsibility, resulting in a total base offense level of 31. Regarding count three, the Presentence Report recommended that Harris be sentenced to 60 months to be served consecutively with his sentence under count two. In addition, the Presentence Report indicated that Harris falls within criminal history category VI of the Sentencing Guidelines because he is a career offender.
 
 
 8
 Combining these factors, the Presentence Report concluded that Harris's sentencing range was 188 to 235 months, in addition to the mandatory consecutive five year term. The Government substantially agreed with these recommendations.
 
 
 9
 The District Court adopted the findings and recommendations of the Presentence Report despite Harris's numerous objections, which we now review on appeal. First, Harris argues that the appropriate base offense level under the career offender provision should have been 32 (prior to the three-level reduction). Harris contends that his sentence for the firearms charge under count three provides the penalty for the use of the firearm. Thus, the additional two-level increase which Harris received for his armed bank robbery conviction amounted to double punishment for his gun use.
 
 
 10
 Second, Harris contends that the District Court erred in rejecting his argument that Harris was erroneously classified as a career offender. Harris argues that his 1982 conviction under the Federal Youth Corrections Act of aiding and abetting in the robbery of a Savings and Loan Association, possession of money from that robbery, and use of a dangerous weapon was improperly considered because he was unable to challenge the constitutionality of the conviction because of the unavailability of transcripts from those proceedings. Moreover, Harris asserts that he had been led to believe that the conviction would be expunged from his record.
 
 
 11
 Finally, Harris contends that the District Court erroneously failed to recognize that it had the discretion to depart downward based on Harris's request for a departure from the career offender level based on over-representation of criminal history. Harris requested the District Court to consider Harris's age at the time of his first offense and his cocaine addiction as factors significant to his request. The District Court did not depart downward because it found that the Sentencing Guidelines did not allow consideration of these factors.
 
 ANALYSIS
 
 12
 We review the District Court's interpretation of the Sentencing Guidelines de novo. United States v. Blaize, 959 F.2d 850, 851 (9th Cir.), cert. denied, 112 S.Ct. 2954 (1992).
 
 I. Classification as a Career Offender
 
 13
 Harris contends that his 1982 conviction under the Federal Youth Corrections Act (FYCA) should not serve as a predicate for classification as a career offender because he is unable to challenge the constitutional validity of the conviction because the transcripts of the proceedings are unavailable.[1] We recognize that the Constitution requires a court to entertain collateral challenges to prior convictions which are considered for sentence enhancement under Sec. 4B1.1 of the Sentencing Guidelines. United States v. Vea-Gonzales, 999 F.2d 1326 (9th Cir.1993). Where a defendant challenges a previous conviction for this purpose, the government bears the burden of proving the existence of the conviction. United States v. Newman, 912 F.2d 1119, 1122 (9th Cir.1990). Following such proof, the defendant assumes the burden of showing that the conviction was invalid. Id.
 
 
 14
 Harris relies on United States v. Lewis, 979 F.2d 1372, 1373 (9th Cir.1992), to support his assertion that, where the transcripts of earlier proceedings are unavailable so that a defendant is foreclosed from collaterally attacking a prior conviction, that conviction may not be considered by the District Court in determining the defendant's career offender classification at sentencing.
 
 
 15
 We find Harris's interpretation unpersuasive. As the Supreme Court stated in Parke v. Raley, the " 'presumption of regularity' that attaches to final judgments" is "deeply rooted in our jurisprudence, even when the question is waiver of constitutional rights". 113 S.Ct. 517, 523 (1992) ( citing Johnson v. Zerbst, 304 U.S. 458, 464, 468 (1938)). "The circumstance of a missing or nonexistent record is, we suspect, not atypical, particularly when the prior conviction is several years old." Parke, 113 S.Ct. at 524. Absent an allegation that the record's unavailability is due to governmental misconduct, we are not prohibited from presuming that a final judgment of conviction offered for purposes of sentence enhancement was constitutionally valid. Id. This is especially true where, as in Harris's case, the defendant never appealed the constitutionality of the earlier conviction before the current collateral attack. Id. at 523.
 
 
 16
 Harris also asserts that his 1982 conviction should not have been considered for the purpose of sentencing classification in the current case because he believed that the conviction would be expunged pursuant to the FYCA. Here again, Harris argues that he has been denied the opportunity to present this argument because of the absence of the transcripts.
 
 
 17
 The District Court found that, even if such a promise had been made by then District Judge Cynthia Holcomb Hall, the promise would have been contrary to the law because Harris was not entitled to expungement of his conviction under the FYCA. We agree.
 
 
 18
 To be eligible for expungement of a conviction, the defendant was required to have been unconditionally released from his sentence before the expiration of the maximum sentence of six years. 18 U.S.C. Sec. 5021(b).[2] Harris was not unconditionally released before the expiration of his six-year term. In fact, Harris had numerous parole violations including habitual cocaine use.
 
 
 19
 Moreover, we find that the unavailability of the transcript worked no harm on Harris regarding this issue. Even if Harris could show that Judge Hall did tell Harris during sentencing that his conviction could be expunged under certain circumstances, the expungement could not have occurred because Harris was not ultimately granted early release. In short, expungement of his conviction was legally impossible.
 
 
 20
 We thus find that the District Court did not err in considering Harris's 1982 conviction under the FYCA for the purpose of classification as a career offender under U.S.S.G. Sec. 4B1.1.
 
 2. Determination of Base Offense Level
 
 21
 Harris next contends that the District Court erred by setting the base offense level for count two at 34 pursuant to U.S.S.G. Sec. 4B1.1 because the sentence imposed in count three already penalized Harris for his use of a firearm in the bank robbery. We find that the District Court did not improperly impose a double sentence when it followed the recommendations of the Presentence Report and imposed a sentence under count two for armed bank robbery and under count three for use of a firearm during and in relation to a crime of violence under 18 U.S.C. Secs. 2113(a)(d) and 924(c).
 
 
 22
 The maximum statutory penalty for unarmed bank robbery is 20 years. Under Sec. 4B1.1, the offense level for conviction for this charge is 32. The maximum statutory penalty for armed bank robbery in violation of 18 U.S.C. Sec. 2113(a)(d), of which Harris was convicted, is 25 years. An offense level of 34 is appropriate where the statutory maximum for the offense is 25 years or more. Thus, the Sentencing Guidelines impose a two-level increase for armed, as opposed to unarmed, bank robbery.
 
 
 23
 Harris argues that because count three imposed a sentence for use of a firearm, the District Court erred in setting the base offense level for count two at 34 rather than 32. We reject this argument.
 
 
 24
 The District Court correctly determined that United States v. Blocker, 802 F.2d 1102 (9th Cir.1986), properly addresses the application of Sec. 924(c) within the context of a conviction for armed bank robbery. In Blocker, we noted that initially the Supreme Court ruled that, in a prosecution for armed bank robbery, a defendant could not be sentenced under both Sec. 2113(d) and Sec. 924(c) " 'because the Sec. 2113(d) charge merged with the firearms offense for purposes of sentencing.' " Id. at 1104 ( citing Simpson v. United States, 98 S.Ct. 909, 914 (1978)). However, we further pointed out that Congress, in the Comprehensive Crime Control Act of 1984, Pub.L. 98-473, 98 Stat. 1837 (1984), amended Sec. 924(c) to ensure that all persons who commit violent crimes, including those crimes which statutorily provide for enhanced sentences for their commission with a dangerous weapon, receive the mandatory sentence, without the possibility that the sentence would run concurrently with that of the underlying offense. Id. Thus, we determined that "Sec. 924(c), as amended, contemplates cumulative punishment [for] those convicted of armed bank robbery ... and possession of a firearm during commission of a crime of violence." Id. at 1105.
 
 
 25
 In light of our decision in Blocker, the District Court correctly ruled that Harris could be sentenced for both the armed bank robbery charge in count two, as well as the firearms charge in count three. The legislative history of amended Sec. 924(c) indicates that Congress has determined that penalty under Sec. 924(c) may be properly imposed in conjunction with Sec. 2113(d). Thus, the District Court was not "double counting" when it set Harris's base offense level at 34, rather than 32.
 
 
 26
 3. Departure Based on Overrepresentation of Criminal History
 
 
 27
 Finally, Harris contends that the District Court erred in ruling that it lacked the discretion to downward depart based on Harris's asserted overrepresentation of criminal history.
 
 
 28
 Initially we must determine whether the District Court's refusal to depart is reviewable. United States v. Belden, 957 F.2d 671, 676 (9th Cir.), cert. denied, 113 S.Ct. 234 (1992). We lack the jurisdiction to review the District Court's refusal to downward depart unless two conditions are satisfied. 18 U.S.C. Sec. 3742(e)(2). First, the record must indicate that the District Court believed that it lacked the discretion to depart. United States v. Brown, 985 F.2d 478, 480 (9th Cir.1993). Second, the record must not indicate that the District Court would not depart had it the authority to do so. Id.
 
 
 29
 Harris requested a downward departure because criminal history category VI, under which Harris was classified as a career offender, allegedly exaggerated his criminal record. Harris requested the District Court to consider his young age at the time of his 1982 conviction and his lengthy cocaine addiction as factors to support his request for a downward departure.
 
 
 30
 At the sentencing hearing, the District Court stated:
 
 
 31
 There is nowhere in [the career offender] statute a place for the court to take into account the things that the defendant has asked us to take into account ... that is, his age at the time of the first offense, his cocaine addiction.
 
 
 32
 (ER at 13.) This determination was incorrect.
 
 
 33
 A defendant may request a downward departure where the applicable criminal history category "significantly overrepresents the seriousness of a defendant's criminal history." U.S.S.G. Sec. 4A1.3 (Policy Statement). The District Court may properly consider a defendant's age at the time he committed an earlier offense in determining whether the defendant's criminal history category overstates the seriousness of his record. Brown, 985 F.2d at 482. We do find, however, that the Sentencing Guidelines specifically provide that drug abuse or dependence "is not a reason for imposing a sentence below the guidelines." U.S.S.G. Sec. 5H1.4.
 
 
 34
 As the Government concedes, it appears from the record that the District Court failed to recognize its discretion to depart downward based on Harris's asserted ground of his young age at the time he committed the 1982 crime. In addition, we find no indication in the record that the District Court would have refused to depart had it recognized that it had the authority to do so. Thus, remand on this issue is appropriate.
 
 
 35
 We further find, however, that the District Court correctly determined that it lacked the discretion to depart downward based on Harris's cocaine addition.
 
 
 36
 We therefore AFFIRM Harris's conviction and REMANDED for resentencing.
 
 
 
 *
 The panel unanimously found this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We note that Harris fails to indicate the nature of this alleged potential constitutional error in the proceedings surrounding his 1982 conviction
 
 
 [2]
 The Federal Youth Corrections Act was repealed in 1984