# PARKE, WARDEN *v.* RALEY

No. 91–719.   Argued October 5, 1992—Decided December 1, 1992

O'CONNOR, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, STEVENS, SCALIA, KENNEDY, SOUTER, and THOMAS, JJ., joined. BLACKMUN, J., filed an opinion concurring in the judgment, post, p. 37.

*Ian G. Sonego,* Assistant Attorney General of Kentucky, argued the cause for petitioner. With him on the briefs were *Chris Gorman,* Attorney General, and *David A. Sexton,* Assistant Attorney General.

*John F. Manning* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Starr, Assistant Attorney General Mueller, Deputy Solicitor General Bryson,* and *Sean Connelly.*

*J. Gregory Clare,* by appointment of the Court, 503 U. S. 957, argued the cause for respondent. With him on the brief was *Mark R. Brown.**

JUSTICE O'CONNOR delivered the opinion of the Court.

Kentucky's "Persistent felony offender sentencing" statute, Ky. Rev. Stat. Ann. § 532.080 (Michie 1990), provides mandatory minimum sentences for repeat felons. Under Kentucky law, a defendant charged as a persistent felony offender may challenge prior convictions that form the basis of the charge on the ground that they are invalid. Respondent, who was indicted under the statute, claimed that two convictions offered against him were invalid under *Boykin* v. *Alabama,* 395 U. S. 238 (1969). The trial court, after a hearing, rejected this claim, and respondent was convicted and sentenced as a persistent felony offender. After exhausting his state remedies, respondent petitioned for a writ of habeas corpus in the United States District Court for the Western District of Kentucky. The District Court denied relief, but the Court of Appeals for the Sixth Circuit ordered that the writ conditionally issue, concluding that the trial court proceedings were constitutionally infirm. As it comes to this Court, the question presented is whether Kentucky's procedure for determining a prior conviction's validity under *Boykin* violates the Due Process Clause of the Fourteenth

---

*Kent S. Scheidegger* filed a brief for the Criminal Justice Legal Foundation as *amicus curiae* urging reversal.

Amendment because it does not require the government to carry the entire burden of proof by clear and convincing evidence when a transcript of the prior plea proceeding is unavailable.

## I

In May 1986, the Commonwealth charged respondent Ricky Harold Raley with robbery and with being a persistent felony offender in the first degree.* The latter charge was based on two burglaries to which respondent had pleaded guilty in November 1979 and October 1981. Respondent never appealed his convictions for those crimes. He nevertheless moved to suppress them in the persistent felony offender proceeding, arguing that they were invalid under *Boykin* because the records did not contain transcripts of the plea proceedings and hence did not affirmatively show that respondent's guilty pleas were knowing and voluntary.

The trial court held a hearing according to procedures set forth in *Commonwealth* v. *Gadd*, 665 S. W. 2d 915 (Ky. 1984), and *Dunn* v. *Commonwealth*, 703 S. W. 2d 874 (Ky. 1985), cert. denied, 479 U. S. 832 (1986). In *Gadd*, the Supreme Court of Kentucky observed that the persistent felony offender statute requires that the prosecution prove only the *fact* of a previous conviction beyond a reasonable doubt; the Commonwealth need not also show that the conviction was validly obtained. 665 S. W. 2d, at 917. But, citing *Burgett* v. *Texas*, 389 U. S. 109 (1967), the court also held that defend-

---

*"A persistent felony offender in the first degree is a person who is more than twenty-one (21) years of age and who stands convicted of a felony after having been convicted of two (2) or more felonies." Ky. Rev. Stat. Ann. § 532.080(3) (Michie 1990). The applicable penalty depends upon the nature of the offense for which the defendant presently stands convicted. A defendant convicted both of second-degree robbery (the crime to which respondent ultimately pleaded guilty) and of being a first-degree persistent felony offender faces a mandatory sentence of 10 to 20 years. §§ 515.030, 532.080(6)(b). A first-degree persistent felony offender is also ineligible for probation or parole until he has served at least 10 years. § 532.080(7).

ants must be able to attack a prior conviction's invalidity. 665 S. W. 2d, at 917. *Dunn* v. *Commonwealth* clarified the procedures to be followed. When a defendant challenges a previous conviction through a suppression motion, the Commonwealth must prove the existence of the judgment on which it intends to rely. Once this is done, a presumption of regularity attaches, and the burden shifts to the defendant to produce evidence that his rights were infringed or some procedural irregularity occurred in the earlier proceeding. If the defendant refutes the presumption of regularity, the burden shifts back to the government affirmatively to show that the underlying judgment was entered in a manner that did, in fact, protect the defendant's rights. 703 S. W. 2d, at 876.

After the prosecution filed certified copies of the prior judgments of conviction for burglary, both sides presented evidence about the earlier plea proceedings. Respondent testified that he had an 11th grade education, that he read adequately, that he was not intoxicated or otherwise mentally impaired when he entered the challenged pleas, and that he was represented by counsel on both occasions. He remembered the trial judge in each case asking him whether his plea was voluntary, but he said he could not remember whether he was specifically told about the rights he waived by pleading guilty. The government's evidence showed that in the 1979 proceeding, respondent signed (though he later claimed not to have read) a "Plea of Guilty" form, which stated that he understood the charges against him, the maximum punishment he faced, his constitutional rights, and that a guilty plea waived those rights. The attorney who represented respondent in the first case verified his own signature on another part of the form indicating that he had fully explained respondent's rights to him. As to the 1981 plea, respondent acknowledged signing a form that specified the charges to which he agreed to plead guilty. He also ad-

mitted that the judge had at least advised him of his right to a jury trial.

Based on this evidence, the trial court denied respondent's suppression motion. Respondent then entered a conditional guilty plea on the robbery and the persistent felony offender counts, reserving the right to appeal the suppression determination. The trial court sentenced him to 5 years for robbery, enhanced to 10 because of the persistent felony offender conviction.

The Kentucky Court of Appeals affirmed. It found the totality of circumstances surrounding the 1979 plea sufficient to support a finding that the plea was knowing and voluntary. It also upheld use of the 1981 conviction. The court explained that respondent's knowledge of his rights in November 1979 permitted an inference that he remained aware of them 23 months later. Respondent's testimony, moreover, indicated that his sophistication regarding his legal rights had increased substantially after his first conviction. The Supreme Court of Kentucky denied discretionary review.

Respondent then filed a federal habeas petition, arguing that the Kentucky courts had erred in requiring him to adduce evidence, rather than requiring the Commonwealth affirmatively to prove the prior convictions' validity. The District Court denied the petition for essentially the same reasons given by the Kentucky Court of Appeals. *Raley* v. *Parke*, Civ. Action No. C89–0756–L(A) (WD Ky., Mar. 15, 1990). The Court of Appeals for the Sixth Circuit, however, agreed with respondent, relying on its recent decision in *Dunn* v. *Simmons*, 877 F. 2d 1275 (1989), cert. denied, 494 U. S. 1061 (1990). 945 F. 2d 137 (1991). *Simmons* held that when no transcript of the prior guilty plea proceeding exists, the prosecution has the entire burden of establishing the plea's validity, and no presumption of regularity attaches to the final judgment. 877 F. 2d, at 1277. It also held that when the prosecution seeks to demonstrate the regularity of the prior proceeding with extrarecord evidence, that evi-

dence must be "clear and convincing." *Ibid.* Although *Simmons* was decided after respondent's persistent felony offender conviction became final, the Commonwealth did not argue that *Teague* v. *Lane,* 489 U. S. 288 (1989), barred its application to this case. Cf. *Collins* v. *Youngblood,* 497 U. S. 37, 40–41 (1990) (*Teague* not jurisdictional).

The Court of Appeals affirmed the District Court's determination with respect to the 1979 plea but reversed with respect to the 1981 plea. It declined to infer that respondent remembered his rights from 1979, reasoning that such an inference would give rise to line-drawing problems and would discriminate improperly between accused recidivists and first offenders on the basis of prior court experience. The Court of Appeals observed that because the trial court hearing took place before *Simmons* was decided, the Commonwealth had not yet had an opportunity to try to meet the higher standard of proof that decision imposed. Thus, rather than issue the writ of habeas corpus outright, the Court of Appeals directed the District Court to grant the writ if Kentucky did not hold a new hearing on the validity of the 1981 conviction in compliance with *Simmons* within 90 days. We granted certiorari. 503 U. S. 905 (1992).

## II

### A

Statutes that punish recidivists more severely than first offenders have a long tradition in this country that dates back to colonial times. See, *e. g.,* I The Acts and Resolves, Public and Private, of the Province of Massachusetts Bay 52 (Boston 1869) (1692 statute providing progressive punishments for robbery and burglary); 3 Laws of Virginia 276–278 (W. Henning ed. 1823) (1705 recidivism statute dealing with hog stealing); see also *Graham* v. *West Virginia,* 224 U. S. 616, 623 (1912). Such laws currently are in effect in all 50 States, see Department of Justice, Statutes Requiring the Use of Criminal History Record Information 17–41 (June

1991) (NJC–129846), and several have been enacted by the Federal Government, as well, see, *e. g.,* 18 U. S. C. § 924(e) (Armed Career Criminal Act); 21 U. S. C. §§ 842(c)(2)(b), 843(c), 844(a) (provisions of the Controlled Substances Act); see also United States Sentencing Commission, Guidelines Manual § 4A1.1 (Nov. 1992) (prior criminal conduct enhances criminal history for purpose of determining sentencing range).

States have a valid interest in deterring and segregating habitual criminals. See *Rummel* v. *Estelle,* 445 U. S. 263, 284 (1980). We have said before that a charge under a recidivism statute does not state a separate offense, but goes to punishment only. See *Oyler* v. *Boles,* 368 U. S. 448, 452 (1962); *Graham, supra,* at 623–624; *McDonald* v. *Massachusetts,* 180 U. S. 311, 313 (1901). And we have repeatedly upheld recidivism statutes "against contentions that they violate constitutional strictures dealing with double jeopardy, *ex post facto* laws, cruel and unusual punishment, due process, equal protection, and privileges and immunities." *Spencer* v. *Texas,* 385 U. S. 554, 560 (1967) (citing *Oyler, supra; Gryger* v. *Burke,* 334 U. S. 728 (1948); *Graham, supra; Mc-Donald, supra; Moore* v. *Missouri,* 159 U. S. 673 (1895)). But see *Solem* v. *Helm,* 463 U. S. 277 (1983) (life sentence without parole imposed under recidivism statute violated Eighth Amendment when current conviction was for passing a bad check and prior offenses were similarly minor).

The States' freedom to define the types of convictions that may be used for sentence enhancement is not unlimited. In *Burgett* v. *Texas,* 389 U. S. 109 (1967), we held that uncounseled convictions cannot be used "against a person either to support guilt or enhance punishment for another offense." *Id.,* at 115. This Court has nevertheless also expressed a willingness to uphold, under the Due Process Clause, a variety of state procedures for implementing otherwise valid recidivism statutes. See *Spencer, supra* (due process allows government to introduce proof of past convictions before

jury has rendered guilt determination for current offense); *Oyler, supra* (due process does not require advance notice that trial for substantive offense will be followed by habitual-criminal accusation).   As Justice Harlan observed 25 years ago in *Spencer*, the Court is not "a rule-making organ for the promulgation of state rules of criminal procedure."   385 U. S., at 564.   "Tolerance for a spectrum of state procedures dealing with [recidivism] is especially appropriate" given the high rate of recidivism and the diversity of approaches that States have developed for addressing it.   *Id.*, at 566.   We think this reasoning remains persuasive today; studies suggest that as many as two-thirds of those arrested have prior criminal records, often from other jurisdictions.   See Department of Justice, *supra*, at 1; see also *Spencer, supra*, at 566, n. 9.   The narrow question we face is whether due process permits Kentucky to employ its particular burden-of-proof scheme when allowing recidivism defendants to attack previous convictions as invalid under *Boykin*.   In our view, Kentucky's burden-shifting rule easily passes constitutional muster.

### B

As an initial matter, we decline to reach the broad argument advanced by petitioner and the Solicitor General that Kentucky's procedure is *a fortiori* constitutional because, with narrow exceptions not applicable here, due process does not require state courts to permit challenges to guilty pleas used for enhancement purposes at all.   Petitioner did not make this argument below or in his petition for certiorari. We ordinarily do not reach issues not raised in the petition for certiorari, see *Yee* v. *Escondido*, 503 U. S. 519, 535 (1992), and it is unnecessary for us to determine whether States must allow recidivism defendants to challenge prior guilty pleas because Kentucky does allow such challenges.   We turn, then, to the question before us.

It is beyond dispute that a guilty plea must be both knowing and voluntary.   See, *e. g., Boykin*, 395 U. S., at 242; *Mc-*

*Carthy* v. *United States,* 394 U. S. 459, 466 (1969). "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina* v. *Alford,* 400 U. S. 25, 31 (1970). That is so because a guilty plea constitutes a waiver of three constitutional rights: the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination. *Boykin,* 395 U. S., at 243.

In *Boykin* the Court found reversible error when a trial judge accepted a defendant's guilty plea without creating a record affirmatively showing that the plea was knowing and voluntary. *Id.,* at 242. The Sixth Circuit thought rejection of Kentucky's burden-shifting scheme compelled by *Boykin*'s statement that the waiver of rights resulting from a guilty plea cannot be "presume[d] . . . from a silent record." *Id.,* at 243. Kentucky favors the prosecution with only an initial presumption upon proof of the existence of a prior judgment; but because a defendant may be unable to offer rebuttal evidence, the Sixth Circuit reasoned that Kentucky's procedure improperly permits the Commonwealth to carry its burden of persuasion upon a "bare record of a conviction." *Simmons,* 877 F. 2d, at 1278.

We see no tension between the Kentucky scheme and *Boykin.* *Boykin* involved direct review of a conviction allegedly based upon an uninformed guilty plea. Respondent, however, never appealed his earlier convictions. They became final years ago, and he now seeks to revisit the question of their validity in a separate recidivism proceeding. To import *Boykin*'s presumption of invalidity into this very different context would, in our view, improperly ignore another presumption deeply rooted in our jurisprudence: the "presumption of regularity" that attaches to final judgments, even when the question is waiver of constitutional rights. *Johnson* v. *Zerbst,* 304 U. S. 458, 464, 468 (1938). Although we are perhaps most familiar with this principle in habeas corpus actions, see, *e. g., Barefoot* v. *Estelle,* 463 U. S. 880,

887 (1983); *Johnson, supra,* it has long been applied equally to other forms of collateral attack, see, *e. g., Voorhees* v. *Jackson,* 10 Pet. 449, 472 (1836) (observing, in a collateral challenge to a court-ordered sale of property in an ejectment action, that "[t]here is no principle of law better settled, than that every act of a court of competent jurisdiction shall be presumed to have been rightly done, till the contrary appears"). Respondent, by definition, collaterally attacked his previous convictions; he sought to deprive them of their normal force and effect in a proceeding that had an independent purpose other than to overturn the prior judgments. See Black's Law Dictionary 261 (6th ed. 1990); see also *Lewis* v. *United States,* 445 U. S. 55, 58, 65 (1980) (challenge to uncounseled prior conviction used as predicate for subsequent conviction characterized as "collateral").

There is no good reason to suspend the presumption of regularity here. This is not a case in which an extant transcript is suspiciously "silent" on the question whether the defendant waived constitutional rights. Evidently, no transcripts or other records of the earlier plea colloquies exist at all. Transcripts of guilty plea proceedings are normally made in Kentucky only if a direct appeal is taken or upon the trial judge's specific direction, Tr. of Oral Arg. 13–14, and the stenographer's notes and any tapes made of the proceedings normally are not preserved more than five years, *id.,* at 16–17. The circumstance of a missing or nonexistent record is, we suspect, not atypical, particularly when the prior conviction is several years old. But *Boykin* colloquies have been required for nearly a quarter century. On collateral review, we think it defies logic to presume from the mere unavailability of a transcript (assuming no allegation that the unavailability is due to governmental misconduct) that the defendant was not advised of his rights. In this situation, *Boykin* does not prohibit a state court from presuming, at least initially, that a final judgment of conviction offered for purposes of sentence enhancement was validly obtained.

*Burgett* v. *Texas*, 389 U. S. 109 (1967), does not necessitate a different result. There the Court held that a prior conviction could not be used for sentence enhancement because the record of the earlier proceeding did not show that the defendant had waived his right to counsel. *Id.*, at 114–115. Respondent suggests that because *Burgett* involved a state recidivism proceeding, it stands for the proposition that every previous conviction used to enhance punishment is "presumptively void" if waiver of a claimed constitutional right does not appear from the face of the record. Brief for Respondent 14–15. We do not read the decision so broadly. At the time the prior conviction at issue in *Burgett* was entered, state criminal defendants' federal constitutional right to counsel had not yet been recognized, and so it was reasonable to presume that the defendant had not waived a right he did not possess. As we have already explained, the same cannot be said about a record that, by virtue of its unavailability on collateral review, fails to show compliance with the well-established *Boykin* requirements.

Respondent argues that imposing even a burden of production on him is fundamentally unfair because "a constitutionally protected right is in question." Brief for Respondent 15. By this he apparently refers to the Fifth and Sixth Amendment rights that a defendant waives by pleading guilty. Our precedents make clear, however, that even when a collateral attack on a final conviction rests on constitutional grounds, the presumption of regularity that attaches to final judgments makes it appropriate to assign a proof burden to the defendant. See, *e. g., Johnson, supra,* at 468–469.

Respondent also contends that Kentucky's rule is unfair because it may be difficult to prove the invalidity of a conviction entered many years ago, perhaps in another jurisdiction, when records are unavailable and witnesses inaccessible. We have little doubt that serious practical difficulties will confront any party assigned an evidentiary burden in such

circumstances. See *Loper* v. *Beto*, 405 U. S. 473, 500–501 (1972) (REHNQUIST, J., dissenting). "The Due Process Clause does not, however, require a State to adopt one procedure over another on the basis that it may produce results more favorable to the accused." *Medina* v. *California*, 505 U. S. 437, 451 (1992). When a defendant challenges the validity of a previous guilty plea, the government will not invariably, or perhaps even usually, have superior access to evidence. Indeed, when the plea was entered in another jurisdiction, the defendant may be the only witness who was actually present at the earlier proceeding. If raising a *Boykin* claim and pointing to a missing record suffices to place the entire burden of proof on the government, the prosecution will not infrequently be forced to expend considerable effort and expense attempting to reconstruct records from farflung States where procedures are unfamiliar and memories unreliable. To the extent that the government fails to carry its burden due to the staleness or unavailability of evidence, of course, its legitimate interest in differentially punishing repeat offenders is compromised. In light of the relative positions of the defendant and the prosecution in recidivism proceedings, we cannot say that it is fundamentally unfair to place at least a burden of production on the defendant.

Respondent cites no historical tradition or contemporary practice indicating that Kentucky's scheme violates due process. See *Medina, supra,* at 446, 447. For much of our history, it appears that state courts altogether prohibited defendants in recidivism proceedings from challenging prior convictions as erroneous, as opposed to void for lack of jurisdiction. See, *e. g., Kelly* v. *People*, 115 Ill. 583, 588, 4 N. E. 644, 645–646 (1886); accord, *State* v. *Webb*, 36 N. D. 235, 243, 162 N. W. 358, 361 (1917). In recent years state courts have permitted various challenges to prior convictions and have allocated proof burdens differently. Some, like the Sixth Circuit, evidently place the full burden on the prosecution.

See, *e. g., State* v. *Elling*, 11 Ohio Misc. 2d 13, 15, 463 N. E. 2d 668, 670 (Com. Pl. 1983) (challenge to allegedly uncounseled conviction); *State* v. *Hennings*, 100 Wash. 2d 379, 382, 670 P. 2d 256, 257 (1983) (challenge to guilty plea). Others assign the entire burden to the defendant once the government has established the fact of conviction. See, *e. g., People* v. *Harris*, 61 N. Y. 2d 9, 15, 459 N. E. 2d 170, 172 (1983) (guilty plea); see also D. C. Code Ann. § 23–111(c)(2) (1989); N. C. Gen. Stat. § 15A–980(c) (1988). Several, like Kentucky, take a middle position that requires the defendant to produce evidence of invalidity once the fact of conviction is proved but that shifts the burden back to the prosecution once the defendant satisfies his burden of production. See, *e. g., Watkins* v. *People*, 655 P. 2d 834, 837 (Colo. 1982) (guilty plea); *State* v. *O'Neil*, 91 N. M. 727, 729, 580 P. 2d 495, 497 (Ct. App. 1978) (uncounseled conviction); *State* v. *Triptow*, 770 P. 2d 146, 149 (Utah 1989) (same). This range of contemporary state practice certainly does not suggest that allocating some burden to the defendant is fundamentally unfair.

Interpretations of analogous federal laws by the Courts of Appeals point even more strongly away from respondent's position. Under the Armed Career Criminal Act, 18 U. S. C. § 924(e), Courts of Appeals have placed on the defendant the entire burden of proving the invalidity of a prior conviction based on a guilty plea. See, *e. g., United States* v. *Gallman*, 907 F. 2d 639, 643–645 (CA7 1990), cert. denied, 499 U. S. 908 (1991); accord, *United States* v. *Paleo*, 967 F. 2d 7, 13 (CA1 1992); *United States* v. *Day*, 949 F. 2d 973, 982–983 (CA8 1991); *United States* v. *Ruo*, 943 F. 2d 1274, 1276 (CA11 1991). Courts of Appeals have also allocated the full burden of proof to defendants claiming that an invalid guilty plea renders a prior conviction unavailable for purposes of calculating criminal history under the Sentencing Guidelines. See, *e. g., United States* v. *Boyer*, 931 F. 2d 1201, 1204–1205 (CA7), cert. denied, 502 U. S. 873 (1991). And the text of the Comprehensive Drug Abuse Prevention and Control Act of 1970

itself clearly provides that a defendant raising a constitutional challenge to a prior conviction used for sentence enhancement bears the burden of proof. See 21 U. S. C. § 851(c)(2).

In sum, neither our precedents nor historical or contemporary practice compel the conclusion that Kentucky's burden-shifting rule violates due process, and we cannot say that the rule is fundamentally unfair in its operation. Accordingly, we hold that the Due Process Clause permits a State to impose a burden of production on a recidivism defendant who challenges the validity of a prior conviction under *Boykin.*

## C

Petitioner also challenges the Sixth Circuit's holding that the prosecution's extrarecord evidence must be clear and convincing. In petitioner's view, the preponderance of the evidence standard applicable to constitutional claims raised on federal habeas, see, *e. g., Johnson,* 304 U. S., at 468–469, is appropriate. The Sixth Circuit based its conclusion to the contrary on *Boykin,* observing that an "extraordinary standard of persuasion" is justified "in view of misgivings inherent in 'collateral proceedings that seek to probe murky memories.'" *Simmons,* 877 F. 2d, at 1277 (quoting *Boykin,* 395 U. S., at 244); see also *Roddy* v. *Black,* 516 F. 2d 1380, 1384 (CA6), cert. denied, 423 U. S. 917 (1975). Respondent, in support of the Sixth Circuit's heightened standard, reiterates his arguments regarding the importance of the constitutional rights at stake and the government's position relative to the defendant's.

Our analysis of this question parallels our discussion of the proper allocation of proof burdens. *Boykin* did not address the question of measure of proof, and even if it had, it would not necessarily follow that the same standard should apply in recidivism proceedings. We find respondent's arguments no more persuasive here than they were in the allocation context. Given the difficulties of proof for both sides, it is

not obvious to us that, once a State assigns the government the burden of persuasion, requiring anything less than clear and convincing extrinsic evidence is fundamentally unfair. Again, we are pointed to no historical tradition setting the standard of proof at this particular level. And contemporary practice is far from uniform; state courts that impose the ultimate burden on the government appear to demand proof ranging from preponderance, see *Triptow, supra,* at 149; *Watkins, supra,* at 837, to beyond a reasonable doubt, see *Hennings, supra,* at 382, 670 P. 2d, at 257. We are therefore unprepared to say that when the government carries the ultimate burden of persuasion and no transcript of the prior proceeding exists, the Due Process Clause requires the Commonwealth to prove the validity of the conviction by clear and convincing extrarecord evidence.

## III

Respondent no longer challenges the validity of his 1979 plea. Thus, the final issue before us is whether the Kentucky courts properly concluded that respondent's 1981 guilty plea was valid. For the proper standard of review, petitioner cites *Marshall* v. *Lonberger,* 459 U. S. 422 (1983), a case quite similar to this one. In *Lonberger,* the state defendant challenged a prior conviction used to obtain a death sentence on the ground that the conviction was based on a guilty plea invalid under *Boykin.* We held that although "the governing standard as to whether a plea of guilty is voluntary for purposes of the Federal Constitution is a question of federal law," 459 U. S., at 431, questions of historical fact, including inferences properly drawn from such facts, are in this context entitled to the presumption of correctness accorded state court factual findings under 28 U. S. C. § 2254(d), *Lonberger, supra,* at 431–432; cf. *Miller* v. *Fenton,* 474 U. S. 104, 113, 115, 117 (1985) (holding that the question whether a confession is voluntary is subject to independent federal determination, expressly distinguishing *Lonberger*).

We said that the federal habeas courts in *Lonberger* were bound to respect the contents of the record of the prior plea proceeding, the state trial court's findings that the defendant was "an intelligent individual, well experienced in the criminal processes and well represented at all stages of the proceedings by competent and capable counsel," the similar conclusions of the state appellate court, and "inferences fairly deducible from these facts." *Lonberger, supra,* at 435 (internal quotation marks omitted); see also *Sumner* v. *Mata,* 449 U. S. 539, 545–547 (1981) (deference owed to findings of both state trial and appellate courts).

We note that petitioner's theory of the case, which we have declined to consider, suggests a different standard. If Kentucky's procedure is indeed not constitutionally mandated, the Kentucky courts' determination that respondent understood his rights when he entered his plea would seem to be reviewable at most for sufficiency of the evidence under *Jackson* v. *Virginia,* 443 U. S. 307 (1979). There is no need to choose between the two standards of review in this case, however, because we are convinced that the Kentucky courts' factual determinations are "fairly supported by the record" within the meaning of 28 U. S. C. § 2254(d)(8).

The Kentucky Court of Appeals, reviewing the trial court's decision not to suppress the 1981 conviction, observed that respondent had an 11th grade education, could read adequately, was represented by counsel in the 1981 proceedings, and was in no way mentally impaired when he entered his plea. The court noted that respondent had signed a form specifying the charges to which he agreed to plead guilty. And it found that he had been fully advised of his rights in 1979. Respondent does not now dispute those determinations. The Kentucky Court of Appeals inferred that respondent *remained aware in 1981 of the rights of which he was advised in 1979.* Supporting that inference was the court's determination, based on respondent's testimony at the trial court hearing, that his "knowledge and sophistica-

tion regarding his rights under our judicial system increased substantially after his first conviction." App. to Pet. for Cert. A32. Respondent knew, for example, the difference between first- and second-degree persistent felony offender charges, and he knew the sentencing and parole requirements for both offenses. "[H]e indicated that the evidence against him and his lack of a strong defense had persuaded him to accept the Commonwealth's offered plea bargain in return for a recommendation that he be given a minimum sentence. In fact, he voluntarily and knowingly chose not to risk the uncertainties of a jury trial." *Id.*, at 32–33.

We have previously treated evidence of a defendant's prior experience with the criminal justice system as relevant to the question whether he knowingly waived constitutional rights, see, *e. g.*, *Lonberger, supra*, at 437; *Gryger* v. *Burke*, 334 U. S., at 730, and we think the Kentucky Court of Appeals fairly inferred that respondent understood the full consequences of his 1981 plea. That, combined with respondent's admission that he understood the charges against him and his self-serving testimony that he simply could not remember whether the trial judge advised him of other rights, satisfied every court that has considered the issue that the government carried its burden of persuasion under the Kentucky framework. We cannot say that this was error.

The judgment of the Court of Appeals for the Sixth Circuit is accordingly

*Reversed.*

JUSTICE BLACKMUN, concurring in the judgment.

I agree that Kentucky's burden-shifting procedures established in *Dunn* v. *Commonwealth*, 703 S. W. 2d 874, 876 (Ky. 1985), cert. denied, 479 U. S. 832 (1986), are constitutional under the Due Process Clause and that the Court of Appeals erred in concluding that the Commonwealth had the burden of establishing by clear and convincing evidence that the prior guilty pleas complied with *Boykin* v. *Alabama*,

395 U. S. 238 (1969). I write separately, however, to emphasize that I agree with this conclusion only because Kentucky's persistent-felony-offender statute, Ky. Rev. Stat. Ann. § 532.080 (Michie 1990), is a sentencing provision rather than a statute creating a separate criminal offense.

The persistent-felony-offender provision is located not in the substantive criminal offense chapters of the Kentucky Revised Statutes but as part of chapter 532, where the offense classifications and the respective penalties are located. Section 532.080 is entitled "Persistent felony offender sentencing," and it is specifically concerned with enhancing the penalty that would otherwise follow from a conviction on the underlying criminal offense. In respondent's case, for example, his persistent-felony-offender status enhanced the punishment normally associated with a second-degree robbery conviction—at least 5 but not more than 10 years imprisonment—to a minimum of 10 and a maximum of 20 years. § 532.080(6)(b).

The Supreme Court of Kentucky has described the persistent-felony-offender statute:

> "There is no additional punishment imposed by a persistent felony offender conviction, merely a more severe punishment. KRS 532.080 does not create or define a criminal offense. It recognizes a status and, in a proceeding separate and apart from the initial trial, fixes a penalty which is to be imposed rather than the one fixed by the jury on the initial trial." *Hardin* v. *Commonwealth,* 573 S. W. 2d 657, 661 (Ky. 1978).

See also *Malicoat* v. *Commonwealth,* 637 S. W. 2d 640, 641 (Ky. 1982). Under Kentucky law, the Commonwealth has the burden of proving beyond a reasonable doubt each "element" of the offense of being a first-degree persistent-felony offender. *Hon* v. *Commonwealth,* 670 S. W. 2d 851, 853 (Ky. 1984). However,

"[i]t is the fact of conviction which the Commonwealth seeks to prove in introducing the judgment against a defendant charged as a persistent felon. KRS 532.080 does not specify that the Commonwealth must affirmatively prove both the fact of conviction and that the previous conviction was not obtained by constitutionally impermissible means." *Commonwealth* v. *Gadd*, 665 S. W. 2d 915, 917 (Ky. 1984).

I believe that had Kentucky chosen to make being a persistent-felony offender a separate crime, as respondent mistakenly believes that it has, Brief for Respondent 12–13, the Commonwealth would have had the burden affirmatively to prove that the underlying felony convictions were obtained by constitutional means. Under those circumstances, *Boykin* would not permit the Commonwealth to rely on a silent record. But, because the persistent-felony-offender statute is properly understood to be a sentencing provision, I see no reason why the Commonwealth may not place the burden on the defendant to rebut the presumption of regularity that attaches to the prior convictions. For this reason, I agree that the Court of Appeals has demanded more of the Commonwealth of Kentucky than is constitutionally required.