_____

No. 95-3126NI
_____

United States of America,       *
                                *
        Appellee,               *
                                *  On Appeal from the United
     v.                         *  States District Court
                                *  for the Northern District
                                *  of Iowa.
Thomas Lee Farmer,              *
                                *
        Appellant.              *

_____

Submitted:  January 8, 1996

Filed:  January 18, 1996
_____

Before RICHARD S. ARNOLD, Chief Judge, BOWMAN, Circuit Judge, and
     JONES,[*] District Judge.
_____

RICHARD S. ARNOLD, Chief Judge.


     On September 13, 1994, the so-called "three strikes and you're
out" proposal became a federal law.  P.L. 103-322, Title VII,
§ 70001, 108 Stat. 1796, 1982, codified as 18 U.S.C. § 3559(c).
The statute imposes a mandatory sentence of life in prison for
persons convicted of three or more specified "serious violent
felon[ies]."  18 U.S.C. § 3559(c)(1).  This case, the parties tell
us, is the first one in the country prosecuted under this new law.
It resulted in the imposition of a life term on the appellant,
Thomas Lee Farmer.  We affirm the convictions and sentences in all

---

     *The Hon. John B. Jones, United States District Judge for the
District of South Dakota, sitting by designation.

respects. We hold, among other things, that the three-strikes law does not violate either the Double Jeopardy Clause of the Fifth Amendment or the Ex Post Facto Clause of the Constitution of the United States.

I.

The defendant Farmer was charged in a four-count indictment. Count I charged him with violating the Hobbs Act, 18 U.S.C. § 1951, by attempting to rob the Hy-Vee convenience store in Waterloo, Iowa, on October 8, 1994. Count II charged him with conspiring to violate the Hobbs Act by planning to rob Hy-Vee stores in Des Moines and Waterloo, Iowa, beginning in September 1994, and continuing through October of that year. Count III charged that Farmer had used a firearm during a crime of violence (the Waterloo robbery) in violation of 18 U.S.C. § 924(c). And Count IV charged Farmer with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 2, 922(g)(1), and 924(a)(2). There is no doubt that Farmer and others planned and carried out a Hy-Vee robbery in Des Moines on September 11, 1994, and that he and others planned to rob the Hy-Vee store in Waterloo on October 8, a plan that failed when police were called after the robbers had entered the store. For this reason, we will not state at length the evidence presented in the District Court, except as necessary to understand the various legal and evidentiary arguments that Farmer presses on this appeal.

After the jury convicted Farmer on all four counts, the District Court[1] sentenced him as follows: on Counts I and II, life in prison as a consequence of the three-strikes statute, 18 U.S.C. § 3559(c); on Count IV (being a felon in possession of a firearm), 27 years and three months, to run concurrently with the life terms

_____

[1]The Hon. Michael J. Melloy, Chief Judge, United States District Court for the Northern District of Iowa.

-2-

on the first two counts; and on Count III (use of a firearm during a crime of violence), five years, to run consecutively to the sentences on the other three counts.[2]  The Court also imposed the mandatory special assessment of $50.00 for each count, and ordered the defendant to make restitution in the amount of $10,000.00. Because of the defendant's inability to pay, no fine was imposed.

## II.

We consider first the legal arguments made by defendant with respect to the three-strikes statute.  The statute provides that a person "convicted . . . of a serious violent felony <u>shall</u> be sentenced to life imprisonment . . ." under certain conditions.  18 U.S.C. § 3559(c)(1) (emphasis added).  The statute comes into play when a defendant, having been convicted of a "serious violent felony," is shown to have been convicted of at least two crimes of a similar nature.  In the present case, the government alleged and proved that Farmer had three previous convictions, all of them in the Iowa state courts:  murder in the second degree, robbery in the first degree, and conspiracy to commit murder.

The legal questions raised on this appeal are important but not difficult.  Most of them are controlled by precedent.  First, Farmer argues that imprisoning him for life for what he calls "peripheral participation in a grocery robbery" is cruel and unusual punishment in violation of the Eighth Amendment.  We doubt the justice of the characterization "peripheral."  Farmer was deeply involved in the planning of the Waterloo robbery and, before

---

[2]We do not understand what it means to make a sentence for a term of years consecutive to a life term where, as here, there is no possibility of parole on the life term.  No doubt the District Court took this step in obedience to the statute, 18 U.S.C. § 924(c)(1), which makes the imposition of a consecutive term of five years mandatory.  In the context of the present case, such a sentence seems to have no practical significance, but the District Court had no choice but to impose it.

-3-

the robbery was aborted, told one of his accomplices to "shoot 'em, shoot 'em," referring to Hy-Vee employees. However that may be, Farmer stands convicted of more than three violent felonies. In the main, the level of punishment to be imposed for crimes is the business of Congress, not the courts. Only in very narrow circumstances has a punishment within statutory limits been held to violate the Eighth Amendment. Imposition of a life term under the circumstances of the present case is, in our view, well within congressional power. See, e.g., Harmelin v. Michigan, 501 U.S. 957 (1991), in which the Supreme Court upheld a life term, without parole, for a first offense of possession of crack cocaine. See also Rummel v. Estelle, 445 U.S. 263, 265 (1980), upholding a life sentence under a recidivism statute where the three felonies involved were passing a forged check, fraudulent use of a credit card, and obtaining money by false pretenses, none of them involving violence. We reject Farmer's Eighth Amendment contention.

Next, Farmer argues that the District Court had discretion whether to impose a life term, and that, under the facts of this case, that discretion was abused. The argument flies in the face of the words of the statute. The statute says "shall." It withdraws all discretion from a sentencing court. It is true that the United States Attorney has the discretion whether to bring a charge under the three-strikes law, but there is nothing unconstitutional about that, in the absence of a showing (which, as we shall see, has not been made here) that the charging decision was based on some constitutionally forbidden factor, such as race. Congress has power to make sentences mandatory and to withdraw all sentencing discretion from the courts, except in capital cases. "Congress has power to define criminal punishments without giving the courts any sentencing discretion." Chapman v. United States, 500 U.S. 453, 467, 111 S. Ct. 1919, 1928 (1991); United States v. Hammer, 3 F.3d 266, 269 (8th Cir. 1993) (upholding a mandatory life sentence for involvement in a continuing criminal enterprise).

-4-

The defendant argues that the three-strikes statute violates the Double Jeopardy Clause of the Fifth Amendment, because it subjects him to new punishment for the crimes, listed above, of which he has been previously convicted. Having once been convicted and sentenced, for example, for murder in the second degree, and having served that sentence, he cannot now, the argument runs, be punished again by having this crime counted as one of his "three strikes." We disagree. He is not being punished again for previous offenses. Rather, these offenses are being taken into account in fixing his punishment for the instant crime, violation of the Hobbs Act. The precedents on this point are clear and uniform. See, e.g., Parke v. Raley, 506 U.S. 20 (1992). Farmer seeks to distinguish these cases by arguing, for example, that in Parke the enhancement imposed on account of previous convictions was only five years. We do not think the argument persuasive. The holding of the case is that a recidivism provision does not violate the Double Jeopardy Clause. The reasoning of the opinion does not depend to any degree on the severity of the enhancement.

Similarly, Farmer urges an argument under the Ex Post Facto Clause - that the three-strikes statute increases the punishment for crimes committed before its enactment. Again, precedent forces us to disagree. See, e.g., Gryger v. Burke, 334 U.S. 728, 732 (1948). As we said in United States v. Allen, 886 F.2d 143, 146 (8th Cir. 1989), "[s]o long as the actual crime for which a defendant is being sentenced occurred after the effective date of the new statute, there is no ex post facto violation."

In a variation of this argument under the Ex Post Facto clause, Farmer points out that the Des Moines robbery, which was committed two days before the enactment of the three-strikes law, was alleged in the indictment as one of the overt acts in Count II, the conspiracy count. In Farmer's view, this is an impermissible use of pre-Act conduct. Again, the contention is inconsistent with controlling caselaw. A conspiracy begun before the effective date

of a relevant statute, but continued after that date, may constitutionally be punished under that statute. Conspiracy is a continuing offense. See, e.g., United States v. Garfinkel, 29 F.3d 1253 (8th Cir. 1994); United States v. Tharp, 892 F.2d 691 (8th Cir. 1989).

The last of what we may call Farmer's broadside arguments - arguments addressed to the validity of the three-strikes law in general - is his claim that Section 3559(c) violates the Equal Protection component of the Due Process Clause of the Fifth Amendment. The law, Farmer argues, has, or will have, a disparate impact on African-Americans, because a greater proportion of them than of other Americans will be sentenced under its provisions. The argument is supported by citations to articles that, it is said, show that African-Americans have been disparately impacted by federal mandatory-minimum sentencing laws in general. The answer is that disparate impact is not sufficient to show a constitutional violation. The Equal Protection Clause of the Fourteenth Amendment is not violated absent invidious or discriminatory purpose, see Personnel Administrator of Massachusetts v. Feeney, 442 U.S. 256 (1979); Washington v. Davis, 426 U.S. 229 (1976). The same is true of the Fifth Amendment. See, e.g., United States v. Clary, 34 F.3d 709 (8th Cir. 1994), cert. denied, 115 S. Ct. 1172 (1995). In Clary, as in a number of other cases, we upheld that portion of the Sentencing Guidelines that treats one gram of crack cocaine as "worth," for sentencing purposes, 100 grams of powder cocaine. The argument was made that this disparity in sentencing had an unfavorable impact on African-Americans. A disparate impact, we said, was not enough to render the differential unconstitutional. Rather, it would have to be shown that "the decisionmaker, in this case Congress, selected or reaffirmed a particular course of action at least in part `because of' not merely `in spite of' its adverse effects upon an identifiable group." 34 F.3d at 712. No such showing has been made here. So Farmer's attack on equal-protection grounds against the three-strikes law must fail for want of proof.

-6-

III.

In addition to these rather general challenges, Farmer argues that the three-strikes law does not apply to him, because neither his offenses of conviction nor the predicate offenses, the three previous convictions, are "serious violent felonies" within the meaning of the statute.  In order to understand this contention we set out the relevant portion of the statute in full text.

> (2)  Definitions.  --  For  purposes  of  this subsection -- . . .
>
>     \*   \*   \*
>
> (F)  the  term  "serious  violent felony" means --
>
>    (i)  a  Federal  or  State offense, by whatever designation and wherever  committed,  consisting  of murder  (as  described  in  section 1111);  manslaughter  other  than involuntary  manslaughter  (as described in section 1112); assault with  intent  to  commit  murder  (as described  in  section  113(a)); assault with intent to commit rape; aggravated  sexual  abuse  and  sexual abuse (as described in sections 2241 and  2242);  abusive  sexual  contact (as described in sections 2244(a)(1) and  (a)(2));  kidnapping;  aircraft piracy  (as  described  in  section 46502  of  Title  49);  robbery  (as described in section 2111, 2113, or 2118);  carjacking  (as  described  in section  2119);  extortion;  arson; firearms  use;  or  attempt, conspiracy,  or  solicitation  to commit  any  of  the  above  offenses; and
>
>    (ii) any  other  offense punishable  by  a  maximum  term  of imprisonment  of  10  years  or  more that  has  as  an  element  the  use, attempted use, or threatened use of

> physical force against the person of
> another or that, by its nature,
> involves a substantial risk that
> physical force against the person of
> another may be used in the course of
> committing the offense;
>
>                  *    *    *

18 U.S.C. § 3559(c)(2).

First, we consider the contention that the offenses of conviction, attempting and conspiring to interfere with interstate commerce by robbery, in violation of 18 U.S.C. § 1951, are not "serious violent felonies." Here it is important to have in mind exactly what the Hobbs Act says. Section 1951 of Title 18 states:

> (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section [shall be imprisoned].
>
> (b) As used in this section --
>
> (1) The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, . . ..

If we isolate the words of the statute relevant to this particular case, we find that Farmer was charged with, and convicted of, attempting and conspiring to commit or threaten physical violence in furtherance of a plan or purpose to obstruct, delay, or affect commerce by robbery. And robbery is defined in § 1951(b)(1), in terms consistent with the traditional common-law

-8-

definition, as the unlawful taking of personal property from the person or in the presence of another by force or violence. Is this conduct a "serious violent felony" within the meaning of 18 U.S.C. § 3559(c)(2)(F)? We think the answer is yes. Farmer argues that Hobbs Act robbery is not robbery as described in §§ 2111, 2113, or 2118 of Title 18 of the United States Code. It therefore, he says, cannot be a "serious violent felony" within the meaning of subparagraph (i) of paragraph (F) of subsection (2). We find it unnecessary to pass on this argument, because we think it clear that Hobbs Act robbery qualifies as a serious violent felony under subparagraph (ii). It is an offense punishable by a maximum term of imprisonment of ten years or more, it has as an element the use, attempted use, or threatened use of physical force against the person of another, and, in addition, it involves, by its nature, a substantial risk that physical force against the person of another may be used in the course of committing the offense. There are types of Hobbs Act violations, for example extortion, that may not qualify under this definition, but extortion is not what Farmer did. He attempted to commit robbery, a crime that, as defined in the Hobbs Act, includes the use or threatened use of force or violence for the purpose of unlawfully taking personal property from the person of another. Further, robbery by its very nature involves a substantial risk that physical force against the person of another may be used. We have no doubt that Hobbs Act robbery qualifies as a "serious violent felony" under subparagraph (ii).

Farmer argues additionally that robbery in his particular case is excluded from the definition by § 3559(c)(3)(A). This paragraph reads as follows:

> (A) Robbery in certain cases. - Robbery, an attempt, conspiracy, or solicitation to commit robbery; or an offense described in paragraph (2)(F)(ii) shall not serve as a basis for sentencing under [18 U.S.C. § 3559(c)] if the defendant establishes by clear and convincing evidence that -

> (i) no firearm or other dangerous weapon was used in the offense and no threat of use of a firearm or other dangerous weapon was involved in the offense; and
>
> (ii) the offense did not result in death or serious bodily injury (as defined in section 1365) to any person.

It is true that the offense did not result in death or serious bodily injury, but it is also true that a firearm was used in the offense. We do not see how paragraph (A) can help Farmer in the circumstances of this case.

What about the predicate offenses? As we have seen, they are murder, robbery, and conspiracy to commit murder. Both murder and robbery are specifically listed as predicate felonies in paragraph (F)(i). That provision includes "a . . . State offense, by whatever designation and wherever committed, consisting of murder . . . [or] robbery . . .." Further, we have no doubt that murder, even murder in the second degree, and robbery, as defined in the law of Iowa, like Hobbs Act robbery, which we have already discussed, would qualify under (ii) as crimes that in their nature involve a substantial risk of physical injury.

IV.

Farmer also advances a number of arguments against his Hobbs Act convictions that are entirely independent from his challenges to the application in his case of the three-strikes law. First, he suggests that his offense was only a garden-variety, single local robbery, not the kind of thing Congress intended to reach in the Hobbs Act. That statute, he correctly points out, applies only to those who obstruct, delay, or affect interstate commerce or the movement of any article or commodity in commerce, by robbery or extortion. See United States v. French, 628 F.2d 1069, 1075 (8th Cir.), cert. denied, 449 U.S. 956 (1980). We have no doubt that

-10-

Congress, when it passed the Hobbs Act, had in mind primarily offenses with a broad impact on interstate commerce, as opposed to local robberies normally prosecuted under state law.  The important point, though, is not what motivated Congress to pass the Hobbs Act, but rather what the Hobbs Act says.  Its words in no way exclude prosecutions for single local robberies, so long as they satisfy the requirement that commerce or the movement of any article or commodity in commerce is obstructed, delayed, or affected, always understanding that by "commerce," in this context, is meant "interstate commerce."

Here, the record is full of evidence that the Waterloo robbery had an effect on interstate commerce.  The main warehouse of Hy-Vee Food Stores, Inc., is in Chariton, Iowa, but Hy-Vee sells products that come from all 50 states and different countries throughout the world, with 70 per cent. coming from outside Iowa.  Hy-Vee has 162 food stores, 38 convenience stores, and 20 drug stores in seven states.  We have no doubt of the power of Congress to protect from violence businesses that are part of an interstate chain.  United States v. Lopez, 115 S. Ct. 1624 (1995), invalidated a statute making it unlawful to possess a firearm within a certain distance from a school.  We think the case has no application to cases of commercial establishments, such as the Hy-Vee store involved here. See id. at 1629 (Congress has the power to "protect . . . persons or things in interstate commerce.").

Farmer points out that some of the evidence of effect on interstate commerce had to do with business done by the Des Moines store, which was robbed before the effective date of the three-strikes law.  This circumstance shows, he asserts, that he in fact is being punished for conduct that occurred prior to the enactment of the relevant statute.  We think not.  Evidence about the business operations of Hy-Vee, whether in Waterloo or Des Moines, is relevant to show the effect on commerce of an interference with business at the Waterloo store.  Farmer was not charged with

-11-

robbing the Des Moines store, but this does not mean that evidence as to the nature of the business done there cannot be admitted for another purpose.

It is also suggested that the indictment is defective because it failed to allege any effect on interstate commerce. On the contrary, the indictment clearly alleges that "Hy-Vee Food Stores, Inc., was engaged in the distribution and sale of food and consumer products in commerce and in an industry which affects commerce," and that Farmer unlawfully obstructed, delayed, and affected commerce "as that term is defined in Title 18, United States Code, Section 1951 . . .." Thus, the indictment incorporated by reference the Hobbs Act definition of "commerce": "All commerce between any point in a State, Territory, Possession, or District of Columbia and any point outside thereof; all commerce between points within the same State, through any place outside such State; and all other commerce over which the United States has jurisdiction." 18 U.S.C. § 1951(b)(3). We do not think the indictment is defective because it failed to allege more specifically the precise circumstances of Hy-Vee's involvement in interstate commerce. The office of an indictment is to give notice of the offense charged, not to plead evidence. The word "interstate," as Farmer argues, does not appear in the indictment, but the reference to § 1951 makes it clear that "commerce," as used in that instrument, means "interstate commerce."

## V.

Finally, Farmer makes three arguments in support of his contention that the District Court erred in denying his motion for a new trial. Each of these arguments has to do with evidence that the District Court ordered the jury to disregard.

First, during the re-direct examination of Reggie Williams, who had been charged with Farmer but subsequently pleaded guilty

and testified against him, the government asked the witness whether Farmer had ever used drugs. Defense counsel immediately objected, and the objection was sustained. Then, at counsel's request, the Court instructed the jury to disregard the question. Counsel then moved for a mistrial, which was denied. On appeal, Farmer argues that the denial of a mistrial, and the subsequent denial of his motion for a new trial based in part on this incident, was reversible error.

How to handle an incident of this sort is the sort of trial decision uniquely suited to the discretion of district judges. In this particular case, we agree with Farmer that the question was improper and never should have been asked. It was not relevant and potentially quite prejudicial. However, the question was never answered, and the Court, agreeing without hesitation with defense counsel, instructed the jury to disregard it. In general, we presume that such admonitions are obeyed. First of all, we think that juries are conscientious and try their best to do what courts tell them to do. Secondly, if every potentially prejudicial remark or piece of evidence in every trial led to a reversal, almost no conviction could be sustained. Life is short, and perfection is rare. In this case, we see nothing to rebut the ordinary assumption that juries will do as they are asked, nor do we believe, in light of all the other evidence in this record, that the mere asking of the question about drug use could have had any substantial effect on the outcome of the case.

The next incident involves the testimony of Ben White. The witness had testified that Farmer had asked him on several occasions to assist in a robbery. One such conversation took place in Norwalk, Iowa, between Des Moines and Waterloo. Farmer, White, and others were at a service station. The government asked who was involved in the conversation, and the witness testified as follows:

      A.   Just me and Tommie.

Q. Just the two of you?

A. Yeah, and Michael.

Q. And Mike?

A. Yeah.

Q. What happened to the other person that was in the car?

A. I think he went to Norwalk because he didn't like being in the car because we had got stopped by the police for gasoline because it was not paid for, so we returned back to Norwalk and -- because I'd --

MR. PARRISH: I'm going to object to that, your Honor. Move to approach the bench for some --

THE COURT: I'll sustain. Disregard anything having to do with not paying for gasoline, ladies and gentlemen of the jury. . . .

Again, we think the admonition to the jury was effective. Farmer argues that the witness was allowed to testify about another crime committed by Farmer, theft of gasoline, and that the prejudicial effect of this evidence clearly outweighed its probative value, so that, under Fed. R. Evid. 404(b), it should have been excluded. The government says, to the contrary, that the evidence was merely part of the story of the crime - attempted robbery of the store in Waterloo - with which Farmer was charged. The conversation took place while this crime was being discussed, and while Farmer and others were on their way to Waterloo to commit the crime. Perhaps the government is right about this, but, even if it is not, we believe the District Court properly exercised its discretion in excluding the evidence, instructing the jury to disregard it, and denying the motion for a mistrial. As the Court said, "I don't think it's prejudicial that it requires a mistrial," Tr. 623, and we believe this conclusion was within the authority of

-14-

the trial judge.

Finally, Farmer objects to the fact that Michael Williams, during the course of cross-examination by Farmer's lawyer, described Farmer and another participant in the crime as "vicious." The Court had entered an order in limine forbidding the government to refer to the defendant as a "hardened criminal." No such reference ever took place. Neither the government nor any witness ever used this phrase to describe Farmer. Under vigorous cross-examination, Michael Williams was claiming that Farmer and Michael Einfeldt had pressured him to help in the robbery. Defense counsel was expressing skepticism about this testimony, and Michael Williams then made the following statement:

> I was trying to get out of it. If you understood the vicious character your client is and Michael Einfeldt is, you probably would participate in it too . . ..

Tr. 913. Again, defense counsel moved to strike the statement from the record and that the jury be advised to disregard it. The Court granted this motion. This time, no motion for mistrial was made, but the Court would presumably have denied such a motion, and we find no fault with the Court's handling of this incident. The witness was claiming that Farmer had forced him into committing a crime. This claim was being challenged by Farmer's lawyer. For the witness to express an unfavorable opinion about Farmer's character in defense of his own conduct was entirely expectable. We do not think that such a characterization would have had much persuasive influence on the jury, and we hold that the District Court did not abuse its discretion.

VI.

In short, after considering all of Farmer's arguments with the seriousness that the penalties imposed in this case demand, we are

-15-

convinced that no error of law and no abuse of discretion occurred in this case.

We take this occasion to commend Farmer's appointed counsel for his diligent service on this appeal.  His briefs are literate and commendably free of typographical errors.  They set forth verbatim the text of relevant statutes, which is a great help to the Court.

The convictions and sentences are affirmed.

A true copy.

    Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.