**IT IS HEREBY ORDERED** that the Plaintiff's Motion for Summary Judgment (# 25) is **GRANTED.**

**Brent Anthony RICHTER, Petitioner,**

v.

**Ron BARTEE, Chairman of the Nebraska Board of Parole, et al., Respondents.**

No. 4:CV95–3309.

United States District Court, D. Nebraska.

May 15, 1996.

Lyle J. Koenig, Lyle Koenig, Lincoln, NE, Paula B. Hutchinson, Paula Hutchinson Law Firm, Lincoln, NE, for petitioner.

J. Kirk Brown, Attorney General's Office, Lincoln, NE, for defendants.

Donald B. Stenberg, Attorney General's Office, Lincoln, NE, pro se.

**MEMORANDUM AND ORDER**

KOPF, District Judge.

This matter is before the Court on the Magistrate Judge's Report and Recommendation (filing 17). No objections to such Report and Recommendation have been filed, as allowed by 28 U.S.C. § 636(b)(1)(C) and NELR 72.4.

I have reviewed the Magistrate Judge's Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and NELR 72.4 and I find after de novo review that the Report and Recommendation should be adopted. Inas-

much as Judge Piester has fully, carefully, and correctly found the facts and applied the law, I need only state that defendant's motion to dismiss for lack of subject matter jurisdiction (filing 9) should be denied.

IT IS ORDERED:

1. the Magistrate Judge's Report and Recommendation (filing 17) is adopted; and

2. Defendant's motion to dismiss (filing 9) is denied.

## REPORT AND RECOMMENDATION

PIESTER, United States Magistrate Judge.

Respondent has filed a motion to dismiss this petition for habeas corpus for lack of subject matter jurisdiction, because it was filed only one day before the petitioner was unconditionally discharged from the custody of the Nebraska Department of Correctional Services. The motion is opposed by petitioner.

This motion does not address the merits of petitioner's claims. Rather, the motion attacks the court's jurisdiction to consider the merits of his claims. Thus, for purposes of deciding this motion, the court assumes that petitioner's claims would, if considered, be found meritorious.

In *Carafas v. LaVallee*, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968) the Supreme Court, overruling prior precedent, held that a habeas petitioner's subsequent unconditional discharge from custody and parole did not terminate federal jurisdiction under 28 U.S.C. § 2254, where the petitioner had been in custody at the time he filed the petition. The Court also concluded that such a discharge did not render the case moot, because of the "collateral consequences" of the conviction. "Because of these 'disabilities or burdens [which] may flow from' petitioner's conviction, he has 'a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed on him.'" 391 U.S. at 237, 88 S.Ct. at 1559.

*Carafas* overruled the previous holding of *Parker v. Ellis*, 362 U.S. 574, 80 S.Ct. 909, 4 L.Ed.2d 963 (1960), a *per curiam* 5–4 decision holding that a petitioner's unconditional release rendered his habeas case moot. Confronting the jurisdictional issue raised by the "in custody" requirement of § 2254, the Court concluded "that under the statutory scheme, once the federal jurisdiction has attached in the District Court, it is not defeated by the release of the petitioner prior to completion of proceedings on such application." 391 U.S. at 238, 88 S.Ct. at 1559–60. Further:

> ... [T]he statute does not limit the relief that may be granted to discharge of the applicant from physical custody. Its mandate is broad with respect to the relief that may be granted. It provides that "[t]he court shall * * * dispose of the matter as law and justice require." 28 U.S.C. § 2243. The 1966 amendments to the habeas corpus statute seem specifically to contemplate the possibility of relief other than immediate release from physical custody. At one point, the new § 2244(b) speaks in terms of "release from custody or other remedy."

*Id.*, at 239, 88 S.Ct. at 1560. (Citations omitted).

In its opinion the Court adopted the dissenting opinion of Chief Justice Warren in *Parker*. *Id.*, at 238, 88 S.Ct. at 1559. That dissenting opinion provides guidance in the present case. The Chief Justice eloquently detailed the history of "The Great Writ" from its days in England

> securing enforcement of the guarantees of Magna Charta. But even the Great Writ was not secure from the pressures of the English Crown, and perhaps the most effective method of eviscerating the remedy proved to be procrastination.

That procrastination led Parliament to impose time deadlines, a course which was followed in this country by Congress requiring courts to decide habeas matters "forthwith." *Parker*, 362 U.S. at 585, 80 S.Ct. at 915, citing 28 U.S.C. § 2243. Noting that petitioner Parker had not had to endure the "arbitrariness of judges," but rather "the time-consuming nature of our system of appellate review and collateral attack," the Chief Justice continued,

We cannot expect history to tell us exactly how to cope with this problem, because it simply did not exist in the early days of the common-law writ, when there was little if any appellate review of the then relatively simple habeas corpus proceedings. But history does provide general guidance. This guidance is incompatible with the idea that the writ designed as an effective agent of justice has become fossilized so that old problems, once thought to have been solved, are now insurmountable because they have taken slightly new forms. The Court has not hesitated to expand the scope of habeas corpus far beyond its traditional inquiry into matters of technical "jurisdiction." The statute permitted this adaptation in the interests of "law and justice," and the Court has responded to the demands of that compelling standard. We have the same latitude in this case, and the character of the writ does not require us to impose upon applicants what will amount to a "time-is-of-the-essence" strait jacket.

*Id.,* at 585–86, 80 S.Ct. at 915–16.

Ironically, the worm has turned. Instead of abusive delays by the Crown or the Ecclesiastical Courts, respondent implies that the petitioner has caused abusive delay by filing his application one day before he was to be discharged from custody. In one sense that certainly appears to be possible. Unlike petitioner in *Parker,* Mr. Richter has not been constantly litigating the validity of his conviction since it was entered; to the contrary, respondent argues that petitioner's last attempt to overturn his conviction became final some two years prior to the filing of this action. While I might agree that such timing casts doubt on petitioner's "good faith," in fact petitioner's state of mind or motive is irrelevant to the determination of this court's jurisdiction.

The habeas statute does not require a petitioner to act in "good faith" in filing his petition. Nor does the statute impose any requirement that a petition be filed more than one day before the petitioner's unconditional discharge. The statute holds that a petitioner must be "in custody." The Supreme Court has construed that to mean "in custody or on parole at the time of the filing of the petition." *Carafas, supra; Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963) (Petitioner on parole remained "in custody"). Respondent seems to imply, without explicitly arguing it, that these pronouncements should somehow be construed to mean something different in the case of a petitioner who files his petition on the last available day to do so. Not surprisingly, no authority is cited for such a proposition.

Like petitioner in *Parker,* this petitioner still faces "collateral consequences" from his conviction. Although petitioner has been restored to most of his "civil rights" pursuant to his discharge, respondent concedes that he has forever forfeited the right to bear firearms. To some, that loss in itself would be sufficient to challenge an assertedly void conviction. In addition, however, petitioner, like Mr. Parker, may come to have this conviction "haunt" him in the future. "It is entirely possible that the conviction in this case would operate to augment the punishment should [petitioner] ever again be adjudged guilty of a crime in [Nebraska] or in any other State." 362 U.S. at 592, 80 S.Ct. at 919. *See also, United States v. Farmer,* 73 F.3d 836 (8th Cir.1996) ("Three strikes" law, 18 U.S.C. § 3559(c)(1), requiring mandatory life sentences for persons convicted of three or more serious violent felonies, is not unconstitutional); *Leonard v. Nix,* 55 F.3d 370 (8th Cir. 1995) (Rule of *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), that successful habeas action is a prerequisite to existence of a related claim under 42 U.S.C. § 1983 was sufficient to confer jurisdiction and prevent mootness after petitioner's release).

Indeed, *Maleng v. Cook,* 490 U.S. 488, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989), cited by the respondent for the proposition that a petitioner who "suffers no present restraint from a conviction," *Id.,* at 492, 109 S.Ct. at 1926, cannot invoke the jurisdiction of the federal courts, actually supports the petitioner's position here. In *Maleng,* the petitioner had already been unconditionally discharged *from the challenged sentence* at the time of the *filing* of the petition. The Court held

that even though the conviction under attack could be and had been used to enhance a sentence imposed on a subsequent conviction, it could not be challenged under 28 U.S.C. §§ 2241 and 2254 after its sentence had expired, for the "in custody" requirement was jurisdictional and could not be met. *Id.*, at 492–94, 109 S.Ct. at 1926–27. Since petitioner in that case had yet to serve the subsequent conviction's sentence (because of serving an intervening sentence), he was "in custody" for purposes of the subsequent conviction only. Thus, after *Maleng*, it appears that the only available means for petitioner here to attack his conviction through 28 U.S.C. § 2254 and hope to overcome the "collateral consequences" noted above, was by filing his petition while he was still "in custody" as construed by the Supreme Court. *Cf., Parke v. Raley*, 506 U.S. 20, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992). This he has done.

Respondent argues that Congress could not have intended to grant habeas relief to one whose custody would end "in all respects" the day after the filing of his petition. As discussed above, however, the collateral consequences of petitioner's conviction under attack have not ended, even if his prison time has. In addition, as stated recently by the Chief Judge of the Eighth Circuit Court of Appeals in *Farmer, supra*, in response to an argument that a statute went beyond what Congress could have intended, "The important point, though, is not what motivated Congress to pass the [statute], but rather what the [statute] says." 73 F.3d at 843. It is Congress that chose to draw the line on habeas filings where it did. If that is inequitable in respondent's view, Congress can be approached to change it.[1]

Chief Justice Warren's closing paragraph in his dissent in *Parker* is apropos:

> In sum, I cannot agree with the Court that George Parker's case comes to us too late. It is too late, much too late, to undo entirely the wrong that has been inflicted upon him; but it is not too late to keep the constitutional balance true. I dissent from the notion that, because we cannot do more, we should do nothing at all.

362 U.S. at 594, 80 S.Ct. at 921.

IT THEREFORE HEREBY IS RECOMMENDED, pursuant to 28 U.S.C. § 636(b)(1)(B), that the motion to dismiss for lack of jurisdiction, filing 9, be denied.

The parties are hereby notified that the failure to file an objection to this recommendation pursuant to 28 U.S.C. § 636 and the local rules of this court may result in a forfeiture of the right to appeal the district judge's adoption of the recommendation.

Dated March 26, 1996.

---

1. In fact, Congress is considering legislation that would limit the filing of habeas actions.