Eliot LOPEZ, Petitioner,

v.

Hans WALKER, Superintendent of Auburn Correctional Facility, Respondent.

No. 01 CIV. 3950(WK).

United States District Court, S.D. New York.

Jan. 3, 2003.

David H. Weiss, New York, NY, for Petitioner.

Office of Attorney General, New York, NY, for Respondent.

## OPINION & ORDER

WHITMAN KNAPP, Senior District Judge.

Eliot Lopez ("Lopez" or "Petitioner") seeks a writ of habeas corpus from his conviction in Supreme Court, Bronx County upon his guilty plea of six counts of Murder in the Second Degree (PL 125.25[1]), for which he was sentenced to an aggregate term of 30 years to life imprisonment. (Barrett, J.) In his petition, Lopez seeks relief based on the following grounds: (1) that his conviction was obtained by a guilty plea not made voluntarily, as Lopez was psychologically impaired and (2) trial and prior appellate counsel were ineffective in failing to observe and raise the issue of Lopez's psychological impairment. Subsequently, Petitioner withdrew his claim of ineffective assistance of counsel as to his appellate counsel only. For the reasons set forth below, Lopez's petition is DENIED.

## FACTUAL BACKGROUND

Lopez's conviction stems from the murder of six people on February 14, 1993. Lopez admitted at his plea colloquy to intentionally causing the deaths of the victims. (*See* Plea Colloquy ("Plea"), at Pet'r's Ex. F at 23.) At no time was it alleged that Lopez was the shooter but rather that he acted in concert with the shooter, Anthony Casellas, as well as three other individuals to cause the deaths of the victims. Casellas was tried and found guilty of six counts of intentional murder in the second degree, six counts of felony murder in the second degree, and conspiracy in the second degree. He was sentenced to 162 years to life imprisonment.

Lopez decided to plead guilty prior to trial. The transcript of the plea colloquy is twenty-four pages in length. During the colloquy, the trial judge, Justice Barrett, advised Lopez at length of the rights he was giving up by pleading guilty and queried the nature of his plea, including whether or not he understood the effects of that plea. (*See* Plea at 3–12.) Justice Barrett also ascertained that Lopez speaks and understands English, that he was represented by counsel, that he had spoken with counsel about his plea of guilty and that his attorney had explained the consequences of his plea as well as the alternative of a trial. (*See* Plea at 2–3.) Finally, Justice Barrett questioned, and Lopez affirmed, that Lopez waived his rights freely and voluntarily, that no one forced him to plead guilty, and that it was his wish to so plead. (*See* Plea at 12–14.) The Assistant District Attorney, Risa Sugarman, recited the details of the crime and Lopez's participation in it, which were then repeated by Justice Barrett and assented to by Lopez. (*See* Plea at 14–22.) While it is true that Lopez's participation in the plea colloquy was largely in the form of monosyllabic responses, those responses were appropriate and consistent with one who is competent as well as voluntarily pleading guilty. The sentencing hearing was similarly lengthy, running twenty-six transcribed pages. At sentencing, Lopez was given the opportunity to make a statement to the Court. In that statement, Lopez referred to the crime as one he "did admit to, but did not commit." (Sentencing Minutes ("Sentencing") at Pet'r's Ex. G at 18.) He also claimed that "I never in my life would hurt anyone, never did, never will." (Sentencing at 18.) Contrarily, he said, "I made my family suffer, their family and the deceased's families. I do have a lot of remorse for their family and I feel very sorry for what happened." (Sentencing at 18–19.) He explained further, "I am pleading guilty today because I feel if I

had gone to trial, I would not have received a fair trial due to the newspapers and the media." (Sentencing at 18.) He went on to say that "[a]fter someone else gets 162 and a half to life, I had no other choice, but to plead guilty. I did make a mistake, but to say that I would hurt anyone is out of my character." (Sentencing at 18.) Outside of these statements to the trial court, no evidence was presented that Lopez did not act to intentionally cause the deaths of the six victims. As promised by the court at his plea, Lopez was sentenced to 30 years to life imprisonment.[1] (*See* Sentencing at 24; Plea at 4.)

## PROCEDURAL HISTORY

On September 26, 1995, Lopez was convicted in Supreme Court, Bronx County of the crime described above. He was sentenced on October 20, 1995. In April 1997, Lopez's original appellate attorney, Virginia LoPreto was assigned to represent Lopez after The Legal Aid Society was relieved. On November 9, 1998, she filed a brief on Lopez's behalf, arguing that the plea and sentencing allocutions cast significant doubt upon Lopez's guilt and negated the essential element of homicidal intent, and that the sentence was harsh and excessive. (*See* Resp't's Ex. 3.) Two days later, Lopez moved the Appellate Division, First Department, for an order relieving Ms. LoPreto; this motion was granted on December 22, 1998. (*See* Resp't's Exs. 4 and 6.) Ms. LoPreto was replaced by Robert S. Dean of the Center for Appellate Litigation. Mr. Dean remains Lopez's attorney.

In February 1999, Mr. Dean appealed the original judgment of the Supreme Court, Bronx County on the following grounds: (1) Lopez was denied due process when the court sentenced him without conducting any inquiry into his claims of innocence and (2) his sentence was excessive. (*See* Resp't's Ex. 7.) On June 10, 1999, the Appellate Division, First Department unanimously affirmed Lopez's conviction. *See People v. Lopez* (1st Dept. 1999), 262 A.D.2d 109, 689 N.Y.S.2d 640. The court held that Lopez "had failed to preserve his claim that the court should not have imposed sentence without inquiring into defendant's post-plea claims of innocence." *Id.* at 109, 689 N.Y.S.2d 640. While the court declined to review the claim in the interest of justice, the court found that were it to do so, it would reject the claim. The court explained, "[s]ince the defendant made no application to withdraw his guilty plea, and since his statements at sentencing clearly expressed his intention that his plea should stand notwithstanding his claim of innocence, there was no requirement that the court make any further inquiry." *Id.* The court concluded that "the plea minutes cast no doubt on defendant's guilt or the voluntariness of his plea, and that his assertions of innocence were conclusory." *Id.* Lopez then applied for a certificate granting leave to appeal to the court of appeals pursuant to C.P.L. 460.20. This application was denied by the Court of Appeals of the State of New York on the grounds that "no question of law [was] presented which ought to be reviewed by the Court of Appeals." (Resp't's Ex. 10.) On July 6, 1999, Lopez made a motion, pursuant to C.P.L. 440.10 seeking an order vacating the judgment of conviction, claiming that the plea was involuntary because Lopez

---

**1.** Lopez's sentence was imposed in the following manner; "[w]ith respect to counts 1, 2, 3, the defendant is sentenced to 15 years to life, each count to run concurrently with each other. As to counts 4, 5, and 6, the defendant is sentenced to 15 years to life, each count to run concurrent." The two sentences were ordered to run consecutively, making the aggregate sentence 30 years to life. (Sentencing at 24.)

was incompetent and that erroneous advice given to Lopez and an incomplete investigation contributed to the involuntariness of Lopez's plea. The trial court denied the motion on its merits, finding that "[o]ther than the bald allegation contained in defendant's affidavit, nothing in the record or other accompanying papers supports defendant's claim[s]." *People v. Lopez* (N.Y.Sup.Ct. Dec. 18, 2000), No. 1612/93, slip op. at 1. Lopez then moved for a certificate granting leave to appeal to the Appellate Division, First Department. (*See* Resp't's Ex. 15.) On February 15, 2001, this application was denied for the reason that "upon the record and proceedings herein, there is no question of law or fact presented which ought to be reviewed..." *People v. Lopez* (N.Y.Sup.Ct. App.Div. Feb. 15, 2001), No. 1612/93, slip op. at 1.

PETITION FOR HABEAS CORPUS

On April 24, 2001, petitioner filed a petition under 28 U.S.C. § 2254 for writ of habeas corpus by a person in state custody. His petition is based on two grounds: first, that the conviction was obtained by a guilty plea not made voluntarily due to petitioner's mental impairment and second, that trial and previous appellate counsel were ineffective in failing to observe and raise the first issue. Lopez further alleges that trial counsel was ineffective in failing to investigate the circumstances underlying his interrogation and in inaccurately leading him to believe that he could be released from prison in as little as 15 years if he pleaded guilty. The government argued in its memorandum of law in opposition to the petition for habeas relief that Lopez's claim of ineffective assistance of appellate counsel was unexhausted since it was not raised in state court. Lopez subsequently withdrew his claim of ineffective assistance of appellate counsel. Thus, the two grounds on which Lopez seeks relief

are: (1) that his conviction was obtained by a guilty plea not made voluntarily and (2) ineffective assistance of trial counsel.

### Standard of Review

The standard of review applicable to habeas corpus petitions challenging state court judgments is set out in 28 U.S.C. § 2254(d). This provision was amended in 1996 by the Antiterrorism and Effective death Penalty Act ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, 1219 (1996). In enacting AEDPA. Congress significantly "modifie[d] the role of federal habeas courts in reviewing petitions filed by state prisoners." *[Terry] Williams v. Taylor* (2000), 529 U.S. 362, 403, 120 S.Ct. 1495, 146 L.Ed.2d 389. Since Lopez's application for habeas corpus relief was filed after April 26, 1996, his petition is governed by the habeas statute as amended by AEDPA. Section 2254(d), as amended by AEDPA, reads:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This statute was construed by the Supreme Court in *[Terry] Williams v. Taylor* (2000), 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389. In explaining the first subsection, the Court found that

A state-court decision will certainly be contrary to clearly established precedent

if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases...A state court decision will also be contrary to the Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent. 529 U.S. at 405–406, 120 S.Ct. 1495. In *Williams,* the Supreme Court explained that under the "contrary to" clause of Section 2254(d), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. An unreasonable application of federal law is not simply an incorrect application of federal law. *Id.* Rather, the state court's application of clearly established federal law must be "objectively unreasonable." *Id.* at 409, 120 S.Ct. 1495. The Second Circuit has explained that "while [s]ome increment of incorrectness beyond error is required...the increment need not be great..." *Jones v. Stinson* (2d Cir.2000), 229 F.3d 112, 119 (internal citations omitted). Moreover, the Second Circuit has held "that a state court determination is reviewable under AEDPA if the state decision unreasonably failed to extend a clearly established, Supreme Court defined, legal principle to situations which that principle should have, in reason, governed." *Kennaugh v. Miller* (2d Cir.2002), 289 F.3d 36, 45.

If the dispute involves a purely factual question, § 2254(d)(2) governs, and a federal court can grant a habeas corpus application only if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Harpster v. State of Ohio* (6th Cir.1997),

128 F.3d 322, 326, *cert. denied,* (1998) 522 U.S. 1112, 118 S.Ct. 1044, 140 L.Ed.2d 109. A state court determination of a factual issue is "presumed to be correct" and the petitioner can rebut the presumption only by "clear and convincing evidence." *See* 28 U.S.C. § 2254(e)(1).

### The Voluntariness of the Guilty Plea

■ It is well-settled that the Due Process Clause of the Constitution requires an affirmative showing that an accused's plea is entered knowingly and voluntarily before the trial court may accept the plea. *See Godinez v. Moran* (1993), 509 U.S. 389, 400, 113 S.Ct. 2680, 125 L.Ed.2d 321; *Parke v. Raley* (1992), 506 U.S. 20, 28, 113 S.Ct. 517, 121 L.Ed.2d 391, *reh'g denied* (1993) 506 U.S. 1087, 113 S.Ct. 1068, 122 L.Ed.2d 372; *Salas v. United States* (2d Cir.1998), 139 F.3d 322, 324, *cert. denied* (1998) 524 U.S. 956, 118 S.Ct. 2377, 141 L.Ed.2d 744. In order to ensure that a guilty plea represents a "voluntary and intelligent choice among the alternative courses of action open to the defendant," the trial court judge must make a searching inquiry into the circumstances surrounding the plea. *Parke,* 506 U.S. at 28, 113 S.Ct. 517 (internal quotations omitted). Once a plea has been entered, it may be attacked on collateral review only if it was not made knowingly and voluntarily. *See Salas,* 139 F.3d at 324.

Lopez argues that his plea of guilty was not made voluntarily because he was not competent to enter such a plea. He also argues that the trial court was in error for not inquiring further into Lopez's competency. A guilty plea is voluntary when it is:

" 'entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own

counsel'" and is not "'induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business.'"

*Brady v. United States* (1970), 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (quoting *Shelton v. United States* (5th Cir. 1957), 246 F.2d 571, 572 n. 2).

The Supreme Court has held that the standard for mental competency at a plea of guilty is the same as the competency standard for standing trial. That standard looks to whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Godinez v. Moran* (1993), 509 U.S. 389, 396–97, 113 S.Ct. 2680, 125 L.Ed.2d 321, citing *Dusky v. United States* (1960) 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824.

▓▓▓ A court may choose to order a competency hearing where evidence suggests that further inquiry into the defendant's mental state is required. *See, e.g., Pate v. Robinson* (1966), 383 U.S. 375, 385–386, 86 S.Ct. 836, 15 L.Ed.2d 815. That is, however, a matter within the discretion of the court. *See Drope v. Missouri* (1975), 420 U.S. 162, 180, 95 S.Ct. 896, 43 L.Ed.2d 103. The Supreme Court has held that "[t]here are...no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed..." *Id.* In fact, "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence...are all relevant in determining whether further inquiry is required..." *Id.* Defense counsel's indication—or the absence of such an indi-

cation—that his client is not competent is of particular importance for at least two reasons. First, the *Godinez* competency standard looks to defendant's ability to consult with his lawyer, and we must presume that where a defendant is unable to consult with his lawyer, the lawyer would make such a grave problem known to the court. *Godinez*, 509 U.S. at 396–97, 113 S.Ct. 2680. Moreover, given the frequency and nature of contact between attorney and client, an attorney has perhaps the greatest opportunity to notice any behavior that might signify incompetence in his client. Thus, defense counsel's inaction with regard to his client's competency is particularly strong evidence of defendant's mental state.

▓▓▓ Failure to conduct a full competency hearing is not a ground for reversal when the defendant appears competent. *United States v. Dunn* (10th Cir.1979) 594 F.2d 1367, 1372. We owe the trial court's determinations regarding competency deference given that court's ability to observe the defendant during the proceedings. *See United States v. Vowteras* (2d Cir. 1974), 500 F.2d 1210, 1212. In this case, Lopez's pre-sentence report made reference to his prior suicide attempts, hospitalization, and use of the drug Sinequan. The author of that report also stated that "[b]ased on [Lopez's] claim of a prior psychiatric history, an evaluation of his present emotional functioning would be appropriate." (Pre–Sentence Report at 4). This evidence alone did not require the court to make a further inquiry into Lopez's competency to stand trial. In sprite of the information contained in the Pre-Sentence Report, Lopez presented to the court as coherent and rational, as well as an active participant in his own case. Moreover, Lopez's attorney, who also read the Pre–Sentence Report and had close contact with the defendant never sought a

competency hearing or even registered concern about Lopez's competency.

In denying Lopez's CPL § 440.10 motion seeking to vacate the judgment of conviction rendered against him, Justice Barrett concludes:

> [N]othing in the record calls into question the voluntariness of defendant's plea. While the pre-sentence report suggested that "an evaluation of his [defendant's] present emotional functioning would be appropriate," this brief reference alone did not provide the Court with reasonable grounds to believe that defendant was an incapacitated person (See, *People v. Morgan*, 87 N.Y.2d 878, 879–880 [638 N.Y.S.2d 942, 662 N.E.2d 260] [1995] )[sic]. Other than his own self-serving affidavit, defendant has provided that Court with no documentation (from his attorney, doctors, etc.) to support a claim that his plea was anything other than knowing and voluntary. His plea was accepted only after a lengthy allocution, during which defendant responded meaningfully and appropriately to every single question posed by the Court.

See *People v. Lopez* (N.Y.Sup.Ct. Dec. 18, 2000), No. 1612/93, slip op. at 3.

■ Because Lopez's conduct did not provide a reasonable basis for doubting his competence to stand trial, we reject Lopez's contentions that the trial court was in error in failing to inquire into Lopez's competency to plead guilty and that his plea was involuntary. The determination of competency is an issue of fact, entitled to deference upon federal habeas review. See *Francis S. v. Stone* (2d Cir.2000), 221 F.3d 100. Under AEDPA, we may only grant habeas relief where the state court's determination was either "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," or "contrary to, or . . .

an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). As the discussion above makes clear, there is no basis for this Court to conclude that the state court's decision was either an unreasonable determination or contrary to clearly established federal law. Accordingly, these claims must be dismissed.

### Ineffective Assistance of Trial Counsel

In *Strickland v. Washington*, the Supreme Court has set forth a two-part standard to determine whether or not an attorney's challenged assistance was indeed ineffective. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. The first prong of the test relies on an objective standard of reasonableness and requires the defendant to show "that counsel's performance was deficient. This requires showing that counsel made errors so serious that he was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The standard of review accorded counsel's performance is "highly deferential." *Id.* at 689, 104 S.Ct. 2052.

The second prong of the *Strickland* standard requires a showing by the defendant of actual prejudice from counsel's performance. *Id.* at 687, 104 S.Ct. 2052. The "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. In determining whether or not the defendant has met his burden, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695–96, 104 S.Ct. 2052. We must "ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent

the errors." *Id.* In making this examination, we need not address both prongs of the *Strickland* standard. In fact, the Supreme Court has made clear that "there is no reason...to address both components of the inquiry if the defendant makes an insufficient showing on one..." *Id.* at 697, 104 S.Ct. 2052.

The Supreme Court has held that the *Strickland* standard applies equally to ineffective-assistance claims arising out of the plea process. *Hill v. Lockhart* (1985), 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203. In the context of guilty pleas, the first prong of the *Strickland* test remains the same. The second prong, however, focuses on the effect of the attorney's performance on the outcome of the plea process. *Id.* at 59, 106 S.Ct. 366. That is, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* In *Hill v. Lockhart,* the Supreme Court held that the District Court was correct in declining to hold a hearing on petitioner's ineffective assistance of counsel claim (and in denying petitioner's habeas petition) because petitioner did not allege that he would not have pleaded guilty and would have insisted on going to trial but for counsel's ineffective performance. *Id.* at 60, 106 S.Ct. 366.

In this case, Lopez alleges three types of ineffective assistance in trial counsel's performance: failure to investigate the circumstances underlying his "interrogation without counsel" while in police custody; counsel's giving Lopez erroneous advice with regard to his date of release, and failure to investigate Lopez's fitness to plead guilty to charges that "could result in...imprisonment for life." Pet'r's Reply Decl. in Supp. of Pet. for Habeas Corpus

at 8. (Hereinafter "Pet'r's Reply.") These claims were addressed by Justice Barrett in his ruling on Lopez's CPL 440.10 motion and found meritless. *See People v. Lopez* (N.Y.Sup.Ct. Dec. 18, 2000), No. 1612/93, slip op. at 2. Specifically, the court found that Lopez's allegation that his attorney failed to investigate his interrogation was "belied by the record" in that Lopez's counsel had moved to suppress the very admission in question as well as submitting to the court "a detailed factual recitation of the circumstances supporting a suppression hearing." *Id.* at 2. The court also found that Lopez's claim that his attorney provided ineffective assistance by assuring him of an early parole date to be "unsupported by the record" given that the court informed Lopez that the sentence to be imposed was "a 30–year sentence before he [would] even [be] eligible for parole and a life sentence at the other end..." (Sentencing at 22–23.)

Nowhere in Lopez's petition does he claim that he would not have pleaded guilty and would have insisted on going to trial but for these alleged deficiencies in counsel's performance. As in *Hill v. Lockhart,* Lopez did not even "allege...special circumstances that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty." 474 U.S. at 60, 106 S.Ct. 366. As we have explained, under AEDPA this Court may only grant habeas relief where the state court's determination was either "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," or "contrary to, or ... an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). As the discussion above makes clear, there is no basis for this Court to conclude that the state court's

decision was either an unreasonable determination or contrary to clearly established federal law. Accordingly, these claims must be dismissed.

## CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus is DENIED, and the action is DISMISSED. As petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See Lozada v. United States* (2d Cir.1997) 107 F.3d 1011, 1016–17, *abrogated on other grounds by United States v. Perez,* 129 F.3d 255 (2d Cir.1997). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. *See Coppedge v. United States* (1962) 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21.

**SO ORDERED.**