**Michael ROWE, Petitioner,**

v.

**David MILLER, Respondent.**

**No. 02 Civ.2898(LAK).**

United States District Court,
S.D. New York.

Jan. 14, 2004.

---

John P. Cooney, Jr., Andrew R. Polland, Davis, Polk & Wardwell, New York City, for Petitioner.

Eli R. Koppel, Assistant District Attorney, Robert M. Morgenthau, District Attorney of New York County, for Respondent.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Petitioner pleaded guilty in New York Supreme Court, New York County, to murder and criminal possession of a weapon, both in the second degree. Prior to sentencing, he moved to to withdraw the plea, claiming that he had been misinformed as to the amount of time he actually would have to serve and his ability to

renege his plea and that he was innocent. He then was sentenced principally to a term of imprisonment of twenty years to life. Petitioner now seeks a writ of habeas corpus on the grounds that his rights to the effective assistance of counsel and due process of law were violated in connection with the application to withdraw the plea.

### Facts

Petitioner pleaded guilty on November 28, 1994.[1] On January 5, 1995, he appeared for sentencing before the judge who had taken the plea.

At the outset of the proceedings, his attorney stated that petitioner had advised him to tell the court that he had not been involved in the homicide, that he was innocent and that he therefore wished to withdraw his guilty plea.[2] The People opposed the application, arguing that the plea was knowing and willing and that the court had taken pains to ensure that the petitioner "understood exactly what he was doing."[3] Petitioner's counsel then stated that petitioner "did willingly and knowingly enter

the plea" but argued that petitioner perhaps had been moved to enter the plea because it offered him a substantially lower sentence than he would have faced had he been convicted after trial. He urged the court not to "stick to the strict four corners of [the] knowingly and willingly standard of voluntariness of a plea."[4] The court thereupon denied the motion.

Immediately after the court ruled, the petitioner addressed the court and said that he had not realized what he had been doing at the time of the plea. He asserted that his attorney had told him that he already was serving a thirteen year sentence from a previous conviction and that he would "only ... get another additional few years" if he pleaded guilty.[5] He claimed that he "was told that off of a twenty year sentence you would only do half of that sum or something like that which is not true."[6] So, he said, despite the fact that he "didn't do this crime," he decided to plead guilty, "just so [he] could get a couple more years...."[7] Petition-

1. The stenographer's notes have been lost. Cohen Aff., Feb. 12, 2003, ¶ 3; Petitioner's Reply Memorandum of Law ("Reply Mem.") 4, Ex. C; Respondent's Memorandum of Law Opposing Petition ("Resp.Mem.") 4. It is unclear whether they ever were transcribed.

2. Respondent's Answer and Exhibits in Support of Answer Opposing Petition ("Resp. Ans. & App."), Ex. I ("Sentencing Tr.") 2.

3. *Id.* 2–3.

4. *Id.* 4–5.

5. *Id.* 6. The parties disagree to some extent about the prior sentence. Respondent contends that petitioner at the time of these events was serving a thirteen and one-third to forty-year sentence. Resp. Mem. 13. Petitioner contends that he was serving concurrent terms of eight and one-third to twenty five years, five to fifteen years, and two and one-third to seven years. Reply Mem. 3. Respondent is correct. *People v. Rowe,* 271 A.D.2d 217, 707 N.Y.S.2d 27 (1st Dept.), *leave*

*to appeal denied* 95 N.Y.2d 870, 715 N.Y.S.2d 225, 738 N.E.2d 373 (2000).

6. Resp. Ans. & App., Sentencing Tr. 6. This alleged advice concerning parole is incorrect. Petitioner will not be eligible for parole until he has served twenty years, the minimum period of his sentence. N.Y. PENAL L. § 70.40(i) (McKinney Supp.2003) ("A person who is serving one or more than one indeterminate sentence of imprisonment may be paroled from the institution in which he is confined at any time after the expiration of the minimum or the aggregate minimum period of the sentence or sentences.")

7. Sentencing Tr. 5–6. Respondent asserts that this advice, if it was given, was correct. Petitioner, had he been convicted after trial, would have faced a potential sentence of twenty-five years to life to run consecutive to his thirteen and one-third to forty-year sentence for the prior conviction. By pleading guilty, he received a negotiated prison term of twenty years to life to run concurrent with his

er's attorney did not respond to petitioner's assertions concerning the advice he allegedly had given, and the court again denied the motion. Sentencing proceeded, during which petitioner asserted that he had been "lead [*sic*] to believe I would be able to ... renege on this plea of guilty." [8] The court imposed concurrent sentences of twenty years to life on the murder charge and three to nine years on the weapons count.

Petitioner appealed to the Appellate Division, First Department, arguing that he was: (1) denied his rights to due process when the court, without making a thorough inquiry, denied his motion to withdraw his guilty plea based upon his alleged misapprehension of the effect of the sentence to be imposed and that the plea therefore was not entered knowingly and voluntarily, (2) denied his right to counsel in that defense counsel took a position adverse to the plea withdrawal motion and the sentencing court nonetheless failed to appoint new counsel to litigate that motion, and (3) sentenced to an excessively harsh prison term that should be reduced in the interest of justice.

On April 4, 2000, the Appellate Division unanimously affirmed in a brief memorandum. It disposed of the claim that the denial of the motion to withdraw the plea had been erroneous, stating that:

> "[a]fter sufficient inquiry, the [state] court properly denied defendant's re-

quest to withdraw his guilty plea. Defendant's claim of innocence was conclusory and his claim that he misunderstood the minimum period of incarceration involved in his sentence 'is not entitled to judicial recognition' (*People v. Ramos*, 63 N.Y.2d 640, 643, 479 N.Y.S.2d 510, 468 N.E.2d 692). In denying the application, the court properly relied on its recollection of the plea proceedings." [9]

It rejected the right to counsel claim, asserting that "[t]here was no need to appoint new counsel where a fair reading of the record establishes that defendant's counsel did not take a position adverse to the plea withdrawal application, which was in any event without merit." [10] Additionally, the court "perceive[d] no abuse of discretion in sentencing." [11] The New York Court of Appeals denied leave to appeal on August 7, 2000.

Petitioner timely filed this petition on or about October 23, 2001. He contends that (1) his Sixth Amendment right to conflict-free counsel was violated when the sentencing court failed to appoint new counsel to represent him on that motion, (2) his right to due process of law was violated when the sentencing court denied his motion to withdraw his guilty plea based on an insufficient record because his plea was invalid and because the court erred in failing to hold an evidentiary hearing; and (3) his sentence was excessive.

---

previous sentence, thus requiring him to serve approximately six and two-thirds additional years. Resp. Mem. 13–14.

**8.** Sentencing Tr. 8.

**9.** *Rowe*, 271 A.D.2d at 219, 706 N.Y.S.2d at 327. The court cited *People v. Ramos*, 63 N.Y.2d 640, 643, 479 N.Y.S.2d 510, 468 N.E.2d 692 (1984), which held that defense counsel's misadvice that had not been placed on the record at the time of the plea was not entitled to judicial recognition.

**10.** *Rowe*, 271 A.D.2d at 219, 706 N.Y.S.2d at 327 (citing *People v. Sosa*, 258 A.D.2d 312, 685 N.Y.S.2d 658 (1st Dept.1999), *leave to appeal denied* 93 N.Y.2d 902, 689 N.Y.S.2d 714, 711 N.E.2d 990 (1999); *People v. Simpson*, 238 A.D.2d 193, 656 N.Y.S.2d 724 (1st Dept.1997)).

**11.** *Rowe*, 271 A.D.2d at 219, 706 N.Y.S.2d at 327.

## Discussion

### A. The AEDPA Review Standard

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") [12] provides that a federal court may grant a writ of habeas corpus to a state prisoner on a federal claim that was "adjudicated on the merits" in a state court proceeding only if it finds that the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." [13]

The Appellate Division held that the sentencing court made "sufficient inquiry" into the defendant's motion and that "there was no need to appoint new counsel" because petitioner and his attorney's positions were not adverse.[14] Neither party contests that it decided petitioner's claim on the merits. Accordingly, its decision must be reviewed under the deferential standard afforded to state court judgments by AEDPA.[15]

Petitioner does not contend that the state court decision was "contrary to clearly established Federal law." [16] He therefore is entitled to relief only if the Appellate Division's decision involved an unreasonable application of clearly estab-

lished federal law. In other words, he may prevail only "if the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." [17]

In making an "unreasonable application" inquiry, a federal court must ask if the state court's application of federal law was "objectively unreasonable." [18] "[T]he most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law ... [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." [19] "[S]ome increment of incorrectness beyond error is required." [20] Nevertheless, this increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." [21]

### B. Ineffective Assistance and the Sentencing Court's Failure to Appoint New Counsel

█ Following the People's response to petitioner's motion to withdraw his guilty

12. 28 U.S.C. § 2254.

13. *Id.* § 2254(d)(1).

14. *Rowe*, 271 A.D.2d at 218–19, 706 N.Y.S.2d at 327.

15. *Lainfiesta v. Artuz*, 253 F.3d 151, 155 (2d Cir.2001) (AEDPA "significantly curtailed the power of the federal courts to grant the habeas petitions of state prisoners"). *See also Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir.2001).

16. This standard is met only if a "state court arrives at a conclusion opposite to that reached" by [the Supreme] Court on a question of law or if the state court decides a case

differently than [the Supreme] Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

17. *Id.*

18. *Id.* at 409, 120 S.Ct. 1495.

19. *Id.* at 410–11, 120 S.Ct. 1495.

20. *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir.2000).

21. *Jones v. Stinson*, 229 F.3d 112, 119 (2d Cir.2000) (quoting *Francis S.*, 221 F.3d at 111).

plea, his attorney responded that the plea had been knowing and voluntary, which was an admission that the state law standard for acceptance of a guilty plea had been satisfied.[22] After the judge's initial ruling, petitioner himself addressed the court and asserted in substance that his attorney had given him incorrect advice about the number of years additional to his preexisting sentence that he would have to serve under the terms of the plea bargain and that he had relied on that advice in entering a guilty plea in spite of his innocence of the crime charged. His attorney then stood mute, and the court rejected the motion to withdraw the plea without further inquiry. Prior to the imposition of sentence, petitioner asserted that he had been led to believe that he would be able to "renege" on his guilty plea, but again his attorney stood silent.

Petitioner contends that a conflict of interest arose when petitioner told the court that he had been misinformed, evidently by counsel,[23] that he would "do only half ... or something like that" of the twenty year sentence called for by the plea bargain.[24] The crux of his position is that his attorney at that point had a personal incentive to secure the acceptance of the plea in order to avoid scrutiny of the advice he had given, an interest that was diametrically opposed to petitioner's desire to persuade the court that he had not been informed accurately of the consequences of the plea and that the plea therefore had not been knowing. Petitioner asserts that the court's failure to appoint new counsel at that point deprived him of his Sixth Amendment right to the effective assistance of counsel.

■ In order to prevail, a defendant with an ineffective assistance of counsel claim must satisfy the two-part test laid out in *Strickland v. Washington:*[25] (1) the attorney's performance must have been below an "objective standard of reasonableness," and (2) the defendant must have suffered prejudice in the sense that but for the attorney's errors the proceeding's results would have been different. In *Hill v. Lockhart,*[26] the Supreme Court extended *Strickland* to ineffective assistance claims arising out of the plea process. Regarding the right to counsel in the plea negotiation process, the Second Circuit has stressed that "the decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in a criminal case ... [and] counsel may and must give the client the benefit of counsel's professional advice on this crucial decision."[27] Further, the withdrawal of a guilty plea before sentencing is a critical stage of a prosecution in which defendants have a Sixth Amendment right to effective

**22.** *E.g., People v. Seaberg,* 74 N.Y.2d 1, 11, 543 N.Y.S.2d 968, 972, 541 N.E.2d 1022 (1989).

**23.** Respondent points out that petitioner did not identify the source of this erroneous advice to the court. Resp. Mem. 11. He now asserts, however, that it came from his attorney. Reply Mem. 11, 16, 26. The Court so assumes.

**24.** Reply Mem. 9, 11.

**25.** 466 U.S. 668, 104 S.Ct. 2052 (1984).

**26.** 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), *cited in Slevin v. United States,* 1999 WL 549010, *9, 1999 U.S. Dist. LEXIS 11430, at *27 (S.D.N.Y. July 28, 1999).

**27.** *United States v. Gordon,* 156 F.3d 376 (2d Cir.1998) (per curiam) (quoting *Boria v. Keane,* 99 F.3d 492, 496–97 (2d Cir.1996)) (holding ineffective assistance of counsel during plea negotiations justified section 2254 habeas relief). *See also Slevin,* 1999 WL 549010, **9–10, 1999 U.S. Dist. LEXIS 11430, at *28.

assistance of counsel.[28] The Second Circuit has stated also: "The *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." [29] Thus, for AEDPA purposes, "the *Strickland* standard ... is the relevant 'clearly established Federal law', as determined by the Supreme Court." [30]

 A defendant's Sixth Amendment right includes representation that is free from conflict of interest.[31] To demonstrate a violation of this right, it must be shown that the attorney in question had either (1) an actual conflict that adversely affected the attorney's performance, or (2) a potential conflict of interest that resulted in prejudice to the defendant.[32] An actual conflict exists when, "during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." [33] If a defendant demonstrates that his attorney labored under an actual conflict and that the conflict "ad-

versely affected his lawyer's performance," then defendant is entitled to a presumption of prejudice.[34] When, however, the alleged conflict is only potential, a defendant must show that he was prejudiced by the conflict.[35] The Supreme Court has held also that the mere possibility of a conflict of interest is insufficient to impugn a criminal conviction.[36]

### 1. Actual Conflict of Interest

According to the state court, "a fair reading of the record establishes that defendant's counsel did not take a position adverse to the plea withdrawal application, which was in any event without merit." [37] Thus, it rejected the claim of a conflict of interest and concluded that the application to withdraw the plea in any event was baseless.

Petitioner points to no Supreme Court decision that even suggests that his assertions at the sentencing hearing created an actual conflict of interest for his attorney. He cites instead *Lopez v. Scully* [38] in sup-

**28.** *Guzman v. Sabourin*, 124 F.Supp.2d 828, 836 (S.D.N.Y.2000). *See Lopez v. Scully*, 58 F.3d 38, 41 (2d Cir.1995) (recognizing that defendants have constitutional right to counsel through critical stage of sentencing).

**29.** *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir.2001).

**30.** *Aparicio v. Artuz*, 269 F.3d 78, 95 & n. 8 (2d Cir.2001).

**31.** *Wood v. Georgia*, 450 U.S. 261, 271, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981); *see also Armienti v. United States*, 234 F.3d 820, 823 (2d Cir.2000).

**32.** *See Mickens v. Taylor*, 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002); *United States v. Blount*, 291 F.3d 201, 210–11 (2d Cir.2002); *Armienti*, 234 F.3d at 823; *Beatty v. United States*, 142 F.Supp.2d 454, 458 (S.D.N.Y.2001).

**33.** *Blount*, 291 F.3d at 211; *Armienti*, 234 F.3d at 824; *see Winkler v. Keane*, 7 F.3d 304,

307 (2d Cir.1993) *cert. denied*, 511 U.S. 1022, 114 S.Ct. 1407, 128 L.Ed.2d 79 (1994); *see also Beatty*, 142 F.Supp.2d at 459.

**34.** *United States v. White*, 174 F.3d 290, 295 (2d Cir.1999) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348–49, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)).

**35.** *Armienti*, 234 F.3d at 824; *Beatty*, 142 F.Supp.2d at 459; *see Blount*, 291 F.3d at 211.

**36.** *See Mickens*, 535 U.S. at 171–72, 122 S.Ct. 1237; *Cuyler*, 446 U.S. at 349–50, 100 S.Ct. 1708.

**37.** *People v. Rowe*, 271 A.D.2d at 219, 706 N.Y.S.2d at 327 (citations omitted).

**38.** 58 F.3d 38, 40–41 (2d Cir.1995); Reply Mem. 11–12; *United States v. Davis*, 239 F.3d 283, 286 (2d Cir.2001) (holding an actual conflict of interest arose when Lopez accused his attorney of having coerced his plea and

port of the allegation that his counsel had an incentive to claim the plea was knowing in order to protect himself from inquiry into whether he misinformed petitioner about the consequences of his plea. But *Lopez* is of no assistance to him for two reasons.

First, the deferential AEDPA standard is met only where a state court unreasonably applies Supreme Court decisions. An unreasonable application of a Court of Appeals decision is insufficient.[39]

Second, *Lopez* does not support petitioner's position. The petitioner in that case, unlike this one, accused his attorney of having procured his plea through "threats and coercion."[40] While that petitioner prevailed, the Court of Appeals has made plain that the coercion claim was crucial to the outcome.[41] At no point did this petitioner accuse his attorney of coercing him to plead guilty.[42]

But all of this is beside the point. Even if there were an actual conflict, the Appellate Division did not unreasonably apply federal law in concluding that the withdrawal application lacked merit in any case.

In *People v. Ramos*,[43] the New York Court of Appeals held that alleged misadvice by defense counsel that is "not placed on the record at the time of [a guilty] plea . . . is not entitled to judicial recognition" and therefore is not a legally sufficient ground for an application to withdraw the plea.[44] In view of *Ramos*, the application to withdraw the plea on the ground that counsel had given erroneous advice, in the procedural context in which it was made,[45] was doomed, and its prospects would not have been enhanced even had the court appointed new counsel. Moreover, the suggestion that counsel's conflict manifested itself in his failure to argue mitigating circumstances with respect to sentencing[46] overlooks the fact that the sentence to be imposed was agreed upon as part of the plea bargain. Thus, even if counsel was conflicted, there was no viable alternative strategy available. In consequence, the Appellate Division certainly did not apply Supreme Court precedent unreasonably in concluding that there was no violation of petitioner's right to counsel by reason of any actual conflict of interest.

defense counsel was placed in the position of either having to admit serious ethical violations, possibly subjecting him to liability for malpractice, or to contradict his client in a manner that would undermine the client's effort to overturn his conviction.).

39. *E.g., Yung v. Walker,* 341 F.3d 104, 110 (2d Cir.2003).

40. *Lopez,* 58 F.3d at 40.

41. *See United States v. White,* 174 F.3d at 296.

42. Respondent argues also that the actual conflict claim is baseless because petitioner never requested the court appoint him with a new attorney. Resp. Mem. at 17. However, petitioner should not be expected to have an in-depth understanding of his Sixth Amendment right to conflict-free counsel. *See Davis,* 239 F.3d at 286 (noting that, given "the occa-

sionally complex standards governing plea withdrawals," it would be "unreasonable to expect a criminal defendant to navigate this area of law without the competent advice of counsel."). Nothing in the record suggests that petitioner's counsel advised petitioner to request new counsel or that the court appoint new counsel.

43. 63 N.Y.2d 640, 479 N.Y.S.2d 510, 468 N.E.2d 692 (1984).

44. *Id.* at 643, 479 N.Y.S.2d at 512, 468 N.E.2d 692.

45. *Ramos* does suggest that petitioner could raise the alleged misadvice in a post-conviction application under the ineffective assistance of counsel rubric. *Id.*

46. Pet. at 4, 13–14; Reply Mem. at 13–14.

### 2. *Potential Conflict of Interest*

■ Perhaps recognizing that the actual conflict argument is unlikely to carry the day, petitioner argues that counsel at least had a potential conflict of interest borne of the presumed desire to avoid close scrutiny of his pre-plea advice to petitioner. But the potential conflict argument stands him in no better stead.

In the case of a potential conflict of interest, however, *Strickland* requires a showing of prejudice, viz. "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." [47] And in considering whether this requirement has been satisfied, it is vitally important to keep one's eye on the ball—that is, to focus on which proceeding petitioner must show probably would have come out differently if counsel had acted appropriately.

One almost inevitably falls into considering whether petitioner has made an adequate showing that he would not have pleaded guilty had he been advised properly, which would be the appropriate inquiry were petitioner's contention here that he lacked effective assistance of counsel in entering his plea. But that is not exactly the argument he makes. Rather, both the petition and the brief of his able appointed counsel in this Court, insofar as they are relevant to this point, assert that he was deprived of the effective assistance of counsel *on the motion to withdraw the plea.*

This makes a very considerable difference. For reasons already noted, the motion to withdraw the plea had no prospect for success in light of *Ramos.* Petitioner has not shown that the outcome *of that motion* could possibly have been different even if he had been represented by other counsel.

To be sure, there is a very close relationship between the argument petitioner has made (i.e., he lacked effective assistance on the motion to withdraw the plea) and the argument that he has not made (i.e., he lacked effective assistance when he entered the plea)—both depend upon the same factual premise. At first blush, it is difficult to see why both arguments were not made and why the Court should not regard them as so interrelated as to warrant dealing with both. Upon reflection, however, the reasons seem plain.

*Ramos* made clear that petitioner could challenge his conviction in the state courts on the ground that he did not receive the effective assistance of counsel *when he pleaded guilty,* albeit only on a post-conviction application.[48] But there is no suggestion anywhere in petitioner's papers that he ever has done so. An attack on the plea, as distinguished from an attack on the ruling on the motion to withdraw the plea, therefore would be foreclosed by this failure to exhaust his state remedies.[49] Indeed, including that argument would render this a mixed petition and result in its dismissal or stay pending exhaustion.[50] Thus, it appears that petitioner, who is represented by counsel, has made a deliberate choice that ought to be respected. In any case, this Court is obliged by statute[51] not to address the merits of an unexhausted claim.

**47.** *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052.

**48.** *Ramos,* 63 N.Y.2d at 643, 479 N.Y.S.2d at 512, 468 N.E.2d 692.

**49.** 28 U.S.C. § 2254(b)(1)(A).

**50.** *Zarvela v. Artuz,* 254 F.3d 374 (2d Cir.), *cert. denied,* 534 U.S. 1015, 122 S.Ct. 506, 151 L.Ed.2d 415 (2001).

**51.** 28 U.S.C. § 2254(b)(1)(A).

In sum, petitioner has failed to show that there is a reasonable possibility that the outcome of the plea withdrawal motion would have been different had he been represented by other counsel. The ineffective assistance claim with respect to that proceeding therefore is without merit.

## C. Petitioner's Motion to Withdraw His Guilty Plea

 Petitioner alleges that the denial of his motion to withdraw his guilty plea was improper and violated his right to due process because the motion judge denied his motion based on a record that failed to establish that his plea was knowing and voluntary, failed to inquire into the facts underlying his application, and failed to hold an evidentiary hearing on his motion.

 The governing principles here are clear. A guilty plea is valid only if it is entered knowingly, voluntarily and intelligently.[52] Furthermore, the record must affirmatively disclose that a defendant who pleaded guilty did so understandingly and voluntarily.[53] When a defendant pleads guilty to a charge, he must do so with a full understanding of the consequences.[54] The test for determining the constitutional validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."[55] When evaluating the voluntariness of a plea, "a habeas court must examine the totality of the circumstances surrounding that plea."[56] But these principles do not exist in a vacuum.

The Second Circuit recently considered, in Hines v. Miller,[57] whether a state trial court's failure to hold an evidentiary hearing on a motion to withdraw a guilty plea

---

**52.** Parke v. Raley, 506 U.S. 20, 28, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992); Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); United States v. Damon, 496 F.2d 718, 721 (2d Cir.1974) ("because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses and understanding of the law in relation to the facts.") (quoting McCarthy v. United States, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) (emphasis added)).

**53.** This additional element was added by the Court in Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); Parke, 506 U.S. at 29, 113 S.Ct. 517; Brady, 397 U.S. at 756 n. 4, 90 S.Ct. 1463; Matusiak v. Kelly, 786 F.2d 536, 544 (2d Cir.1986) (the standard set by Boykin requires "not only that the plea court inquire into the defendant's understanding of the charges, the proceedings, and the rights to be foregone, but also that it do so showing 'the utmost solicitude of which [the court is] capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence.'") (quoting Boykin, 395 U.S. at 243–44, 89 S.Ct. 1709).

**54.** Brady, 397 U.S. at 748, 90 S.Ct. 1463 ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."); Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009 (1927) ("[C]ourts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences."); Damon, 496 F.2d at 721.

**55.** Hill, 474 U.S. at 56, 106 S.Ct. 366; North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

**56.** Joseph v. Fischer, 2003 WL 68032, at *5 (S.D.N.Y. Jan.7, 2003) (citing Henderson v. Morgan, 426 U.S. 637, 644–45, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976)); Brady, 397 U.S. at 749, 90 S.Ct. 1463 ("The voluntariness of [the] plea can be determined only by considering all of the relevant circumstances surrounding it."); Lopez v. Hans Walker, 239 F.Supp.2d 368, 373 (S.D.N.Y.2003);.

**57.** Hines, 318 F.3d 157.

violated due process. It noted that under both federal and state precedent, a defendant is not entitled as a matter of right to an evidentiary hearing on a motion to withdraw a guilty plea.[58] It went on to say that the failure to hold an evidentiary hearing on a defendant's motion to withdraw a plea does not offend a deeply rooted or "fundamental" principle of justice.[59]

*A fortiori,* the Appellate Division's conclusion that the state court properly denied defendant's request to withdraw his guilty plea "after sufficient inquiry" [60] and without a hearing was not unreasonable.[61]

## D. The Excessive Sentence Claim

■ The petition asserts that the sentence was excessively harsh and should be reduced in light of the mitigating circumstances that the sentencing judge failed to take into account.[62] The severity of a sentence, however, ordinarily is not a ground for habeas relief because "no federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." [63] Petitioner concedes his sentence is within the legal statu-

tory limit.[64] Accordingly, this Court may not review it for excessiveness.[65]

## Conclusion

Petitioner has failed to demonstrate that the state court unreasonably applied clearly established federal law as determined by the Supreme Court. For the reasons set forth above, the petition is denied. A certificate of appealability is denied, and the Court certifies that any appeal here-from would not be taken in good faith within the meaning of 28 U.S.C. § 1915(a)(3).

SO ORDERED.

---

58. *Id.* at 161–62 (citations omitted).

59. *Id.* at 162.

60. *Rowe,* 271 A.D.2d at 219, 706 N.Y.S.2d at 327.

61. Furthermore, the state did not foreclose altogether any examination of plea and leave petitioner without remedy. According to *Ramos,* petitioner was free to establish his counsel's misadvice in the proper state proceeding by raising his ineffective assistance of counsel claim in a posttrial application brought under N.Y. C.P.L. 440.10. 63 N.Y.2d at 643, 479 N.Y.S.2d 510, 468 N.E.2d 692 (citations omitted).

62. Pet. at 13–14.

63. *White v. Keane,* 969 F.2d 1381 (2d Cir. 1992).

64. Pet. at 13.

65. *See, e.g., Briggs v. Phillips,* 02 Civ. 9340, 2003 WL 21497514, at *7 (S.D.N.Y. June 30, 2003); *McPherson v. Greiner,* 02 Civ. 2726, 2003 WL 22405449, *17, 2003 U.S. Dist. LEXIS 18718, at *62–65 (S.D.N.Y. Oct. 22, 2003).